FRANCE AND NEW YORK MEDICINE COMPANY, PLAINTIFF AND
APPELLANT, *v.* REILY ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Ponce in an Action for
the Refund of Taxes Paid under Protest.

No. 2737.—Decided March 27, 1923.

TAXES—CORPORATION—DOMESTIC CORPORATION—PERSONAL PROPERTY—INTANGIBLE PROPERTY.—The difference between the value of the real property and the tangible personal property and the value of the capital stock and bonds of a corporation plus the surplus and undivided profits represents the intangible personal property subject to the payment of insular taxes, and a domestic corporation whose capital and property are outside of Porto Rico is subject to the payment of taxes to the Insular Treasury on its intangible personal property in accordance with section 317 of the Political Code as amended in 1904.

ID.—STATEMENT OF CASE—OPINION.—The failure of the court below to comply with section 227 of the Code of Civil Procedure, which requires the judge to file a statement of the case setting forth the facts and giving the reasons upon which his decision is based, is not a fundamental error which justifies a reversal.

The facts are stated in the opinion.

*Messrs. J. A.* and *A. S. Poventud* for the appellant.

*The Attorney General* and *Mr. José E. Figueras, Fiscal,*
for the appellees.

MR. JUSTICE FRANCO SOTO delivered the opinion of the
court.

This is an action for the refund of taxes paid into the
Treasury under protest.

In the complaint the following is alleged: That the
plaintiff is incorporated under the laws of Porto Rico, but
has here no personal or real property; that it has its business and its capital permanently invested in the State of
New York; that to Porto Rico it only ships goods on orders in
interstate commerce; that it pays taxes under the laws of the
said State and also into the Federal Treasury; that it has
in Porto Rico only some outstanding personal accounts and
an automobile having a value of $775.55, on which it should
pay a tax of only $12, the accounts being exempt from

taxation; that notwithstanding these facts the Treasurer of Porto Rico assessed taxes on the value of its stock and undivided profits, amounting in all to $173,283.56, and levied thereon a tax of $2,127.52, which is unlawful, except as regards the said tax of $12 on the automobile; that from the Treasurer's decision the plaintiff appealed to the Board of Review and Equalization which affirmed the said assessment; that on the demand of the Treasurer of Porto Rico the plaintiff paid the amount of the said tax on June 22, 1920, protesting with regard to the sum of $2,115.52 as contrary to law, because the law does not authorize the imposition of taxes upon domestic corporations whose capital and property are outside of Porto Rico; that the tax imposed is arbitrary and unlawful and in violation of section 2 of the Jones Act and of the Fourteenth Amendment to the Federal Constitution which is also applicable to this Island.

The material parts of these allegations were admitted in the answer, with the exception that the defendants maintain the legality of the tax imposed and collected by the Treasurer of Porto Rico.

The case was tried on its merits and the trial court dismissed the complaint, whereupon the plaintiff took this appeal.

On the issue as joined the question before this court is whether the tax was imposed upon the plaintiff in conformity with section 317 of the Political Code, as amended by the Act of March 10, 1904, and whether in the application of that statute section 2 of our Organic Act has been violated in any manner.

Section 317, *supra,* reads as follows:

"Sec. 317. The personal property of institutions, corporations and companies incorporated under the laws of Porto Rico other than banking institutions having a share capital shall be assessed to such institutions, corporations and companies by the Treasurer of

Porto Rico in the manner provided by this section. The actual present value of the capital of such corporations shall be ascertained by the Treasurer of Porto Rico from the sworn declarations of the presidents, directors or other chief officers of such corporations as required by section 319, and from such other reliable information as the Treasurer may have or secure, and the present actual value shall in no case be less than the value of the capital stock and bonds · plus the surplus and undivided earnings of said institutions, corporations and companies, nor less than the market value of the real and personal property of said institutions, corporations and companies, including in personal property rights, franchises and concessions. From the valuation thus obtained shall be deducted the total valuation of real property of said corporations, as ascertained in accordance with the provisions of section 316, and the remainder shall be deemed to represent the personal property of said corporation for purposes of taxation."

For the purposes of the imposition of taxes for the fiscal year 1919–1920 and in compliance with the duties imposed upon domestic corporations by the statute cited, the plaintiff presented to the Treasurer of Porto Rico the corresponding schedule containing a declaration of its property which served the Treasurer as a basis for the assessment, in the following form:

| | |
|---|---|
| Paid in capital of the corporation_____ | $170, 000. 00 |
| Undivided profits_____ | 3, 283. 56 |

These two sums amount to $173,283.56 and on this total the Treasurer imposed upon the plaintiff corporation a tax of $2,127.52.

Construing section 317 of the Political Code in discussing the second and only assignment of error which merits serious consideration by this court, the appellant says that this statute refers to taxes imposed upon property; that is, that the law imposes a tax upon the property of the corporation, but not upon its capital stock. Undoubtedly that is the essential point for consideration in this case.

All of the argument of the appellant is based on the

contention that the Treasurer should have taxed only its tangible property in Porto Rico and that, therefore, its only taxable property in Porto Rico was an automobile valued at $775.53, it being alleged also that its principal place of business and its real and personal property are outside of Porto Rico.

By reason of their peculiar organization corporations are subject to an additional burden because of the fact that in the taxation of their property there are elements which do not exist in the case of individuals and which can be reached for purposes of taxation without giving rise to any discrimination in the legal sense.

"In corporations there are five elements of taxable value, each of which is under some circumstances an appropriate subject of taxation, viz., (1) franchises, (2) capital stock in the hands of the corporation, (3) corporate property, (4) income and (5) shares of the capital stock in the hands of the individual shareholders.

"The power of the state to tax the elements of taxable value set forth in the preceding paragraphs is not confined to a choice of a single element to the exclusion of the others. Undoubtedly the elements themselves represent to a greater or less degree the same basic constituents of the corporate assets. Each of these elements is, however, under some circumstances, an appropriate subject of taxation, and it is, no doubt, within the power of a state, when not restrained by constitutional limitations, to assess taxes upon them in a way to subject the corporation or the stockholders to what in effect amounts to double taxation. The elements themselves, being distinct, may be severally taxed, although the burden falls upon the same property in each case." 26 R. C. L. 157, 158.

We admit that section 317 of the Political Code nominally refers to taxes on the property of corporations, or the third of the elements referred to above, that is, corporate property, but considering the manner contemplated by section 317 of our Political Code for taxing personal property, referring to intangible property, indirectly although ex-

pressly, the taxation reaches the capital stock of the corporation.

"There are many different methods of taxing the property of corporations. In general, real estate and tangible personal property of such a character that it has a fixity of situs in a particular place is subject to local taxation where it is situated, and the remainder of the property of the corporation is reached indirectly by a tax on the capital stock or on the franchise. The intangible assets of a corporation may, however, be subjected to a property tax, and be valued by deducting the assessed value of the tangible property of the corporation from the aggregate value of its stock and bonds." 26 R. C. L. 178.

Thus it may be easily understood that the method employed by our system of taxation for the assessment of the property of domestic corporations includes real property and tangible personal property and the difference between the value of these properties and the value of the capital stock and bonds, plus the surplus and undivided profits, represents the intangible personal property subject to taxation, and it is, therefore, readily seen that the tax reaches expressly and indirectly the capital stock of a corporation.

"In some jurisdictions the value of the personal property, tangible and intangible, of a corporation is determined by deducting the cost of the real estate belonging to the corporation from the aggregate paid in capital stock." 26 R. C. L. 179.

The appellant insists, however, that the tax in question being exclusively a tax on the property of a domestic corporation, it is very clear that when the property of a corporation is permanently situated in a different state and there invested in connection with its business, it is unlawful to tax such property or anything that may seem to substitute or represent it. But these conclusions of the appellant are so absolute that they do not respond to the provisions of the Political Code which we have considered, nor are they in harmony with the jurisprudence applicable to such cases.

It would seem at first sight that the system of assessment of domestic corporations in the manner prescribed by section 317 of the Political Code imposes a property tax, but it is really directed to the stock of the association and is a tax on the intangible personal property after deducting the real property and the tangible personal property. In that case it seems that the tax is not a tax on the property of the corporation, but is rather an excise tax. In this sense it is important to know under certain systems of taxation whether it is one or the other, because if the tax is simply an excise tax the capital stock of the corporation is merely the measure of the tax and then the manner in which the capital is invested and the situs of the property are immaterial; but if on the contrary the tax is a property tax, the stock of the corporation can not be taxed without deducting the value of the property situated in another state. See 26 R. C. L. 171.

In connection with the foregoing we shall consider some of the points made by the appellant in its brief, as follows:

That it was alleged and proved that the appellant has its property in New York; that the power of New York and other states to impose taxes upon the property of the plaintiff, real or personal, situated therein is unquestionable, and that it would be unlawful to impose upon it a double tax, as would be the case if a tax should have to be paid in Porto Rico on such property.

The evidence shows that the appellant was incorporated in Porto Rico; that it has no real property or tangible personal property in Porto Rico except an automobile appraised at $775.55 and certain personal accounts; that its sole business here is to ship to this country merchandise in its line of business; that it pays taxes under the laws of the State of New York; that its principal business office.

and chemical laboratory are in New York; that it owns in the city of New York a masonry building which is used for its corporate purposes valued at about $65,000, on which it pays taxes in that city, but it was not shown clearly and exactly when the said building was acquired by the plaintiff.

The immediate consequence deduced from the fact that the plaintiff is incorporated in Porto Rico is the presumption that it is considered as a resident here and that its personal property is *prima facie* taxable at the place of its residence or situs. But if, as is the case under our statute, the value of the intangible personal property is fixed by deducting the cost of the real property belonging to the corporation from the aggregate value of the corporate stock, then in this particular case it was possible to deduct the real property and the tangible personal property situated outside of the Island, provided the existence of such property during the fiscal year for which the assessment was to be made was proved.

No doubt it would be a great advantage to the nation and to each state if the principles of taxation could be harmonized so as not to conflict with each other and a common plan could be adopted by which taxation of substantially the same property in two jurisdictions could be avoided, but the Constitution does not go so far as to require this. No state is bound to make its tax laws harmonize with those of the other states; therefore intangible personal property may be taxed in two different states, as when it is taxed both at the domicile of the owner and in a state in which it has acquired a business situs. In that class of cases the constitutionality of double taxation in that manner is beyond question. See 26 R. C. L., pp. 264 and 265.

It might be thought that under such a theory we have followed the ancient maxim of *mobilia sequuntur personam*

and the appellant advances the argument that this old and traditional rule that personal property was taxable at the domicile of the owner without regard to its situs, is no longer in existence in accordance with decisions of the Supreme Court of the United States. But we find that these recent decisions of the highest court of the nation refer to tangible personal property and are perfectly applicable in so far as such property is concerned. They have laid down the unequivocal rule that when a state imposes a tax on the tangible personal property of one of its residents who is permanently located in another state, it amounts to depriving him of his property without due process of law and is in violation of the Federal Constitution. *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194, 26 S. Ct. 36, 50 U. S. (L. ed.) 150, 4 Ann. Cas. 493, and note; *Fidelity etc. Trust Co.* v. *Louisville,* 245 U. S. 54, 38 S. Ct. 40, 62 U. S. (L. ed.) 145, L. R. A. 1918 C, 124.

But the point under discussion assumes a diametrically different aspect in the case of intangible personal property. The ancient maxim cited is in effect and is what determines the situs for the purposes of taxation of such property.

"The maxim *mobilia sequunter personam* embodies the general principle in relation to situs for the purposes of the taxation of intangible personal property, such as bonds, stocks, and the like; and while such property may sometimes acquire a situs for taxation in a state other than that of the owner's domicil, and may, perhaps, lose its situs in the state of the owner's domicil, still it is the general rule in the absence of controlling circumstances to the contrary that the situs of intangible property for the purposes of taxation is the state of the owner's domicil. There is an obvious distinction between tangible and intangible property, in the fact that ordinarily there is no method by which the existence or ownership of intangible property can be ascertained in the state of its situs, no way by which the owner can be reached by process in a state other than that of his domicil, or the collection of the tax other-

wise enforced. Conceding, however, that in some cases intangible personal property may acquire a situs other than at the domicil of the owner, it does not follow and it has never been author- itatively determined that the acquisition of such situs and subjection to taxation by virtue of it precludes the state of the owner's domicil from taxing the same property also." 26 R. C. L. 282–283.

In order to be consistent with the construction which we have placed upon section 317 of the Political Code it would remain to decide in this case whether it is necessary to deduct from the tax imposed upon the plaintiff the value of the real property situated in the city of New York. However, a question of fact prevents us from reaching an affirmative conclusion, and that is that it was not shown clearly and exactly when the real property was acquired, or at least that it was acquired prior to or during the fiscal year for which the tax was imposed upon the plaintiff. No documentary evidence was offered on this point and the oral evidence was uncertain and hesitant in an attempt to fix the date of acquisition. Besides it would be very doubtful that such deduction could be made when there is nothing in this connection in the appeal taken by the appellant to the Board of Review and Equalization from the decision of the Treasurer of Porto Rico. In that class of appeals it is necessary to state the grounds on which the tax alleged to have been imposed is attacked as unlawful or excessive, and it may be seen that the grounds given by the plaintiff for its appeal are the following:

"That the corporation has no capital in Porto Rico and obtains its profits from its business established in the city of New York, where it will have to pay the tax.

"It is evident, therefore, that if the plaintiff is compelled to pay the same tax in New York and in Porto Rico at the same time, one of the two taxes is unjust, and we think that this matter should be taken up by Treasurer of Porto Rico with the corresponding office in the United States in order to determine where the plaintiff should pay the tax, whether in New York or in Porto Rico."

It may be observed that in the appeal it was not mentioned that among the properties belonging to the appellant was the real property to which some of the witnesses referred.   It was merely attempted to show in a general way that the appellant has no capital invested in Porto Rico and that it obtains its profits from its business established in the City of New York, in the belief that under such circumstances the plaintiff was exempt from taxation in this Island except on its tangible personal property.   In this situation the appellant did not understand clearly the pro· vision of section 317 of the Political Code, which the Treasurer applied correctly;   therefore, the imposition and collection of the tax were in accordance with the law and the jurisprudence applicable.

The appellant assigns another error to the trial court in its failure to prepare and file a statement of the case setting forth the facts and giving the reasons upon which its decision was based.   This assignment is discussed at some length by the appellant in its brief and the jurisprudence cited and the reasoning are interesting, but the same question was fully considered by this Supreme Court in the case of *Paganacci* v. *Lebrón,* 24 P. R. R. 743, wherein it was held that section 227 of the Code of Civil Procedure, as amended in 1911, was not as strict as the California statute which requires the court to make separately formal findings of fact and conclusions of law, holding that the omission of the court below in that connection was not error such as would justify a reversal of the judgment.

For the foregoing reasons the judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.