# UNION REFRIGERATOR TRANSIT COMPANY *v.* KENTUCKY.

## ERROR TO THE COURT OF APPEALS OF THE COMMONWEALTH OF KENTUCKY.

No. 84.   Argued October 13, 16, 1905.—Decided November 13, 1905.

The power of taxation is exercised upon the assumption of an equivalent rendered in the protection of the property and person of the taxpayer, and if such equivalent cannot possibly be rendered because the property taxed is wholly beyond the jurisdiction of the taxing power the taxation thereof within the domicil of the owner amounts to a taking of property without due process of law.

While there may be individual cases where the weight of the tax neces-

sarily falls unequally on account of special circumstances the general rule is that in classifying property for taxation, some benefit to the property taxed is a controlling consideration, and a plain abuse of the power in this respect may justify judicial interference.

The proper use of a legal fiction is to prevent injustice and the maxim *mobilia sequuntur personam* may only be resorted to when convenience and justice so require. That doctrine does not apply to tangible personal property permanently located in another State where it is employed and protected, acquires a *situs* and is subject to be there taxed irrespective of the domicil of the owner; and an attempt on the part of the State in which the owner is domiciled to tax such property amounts to a deprivation of property without due process of law within the purview of the Fourteenth Amendment.

So *held* in regard to the taxation of cars owned by a transit refrigerating company and which were permanently employed without the State in which the company was domiciled.

THIS proceeding was begun by a statement filed by the revenue agent of the Commonwealth in the Jefferson County Court, praying that certain personal property belonging to the plaintiff in error be assessed for taxation for state, county and municipal taxes, and be also adjudged to pay a penalty of twenty per cent on the aggregate amount of the tax.

To this statement the Transit Company filed certain demurrers and answers, upon which, and upon the deposition of the controller of the company in St. Louis, Missouri, the case went to a hearing, and resulted in a finding of facts that the Transit Company was the owner of two thousand cars in September, 1897, 1898, 1899 and 1900, to which years the recovery was limited, of the value of $200 each; that its cars were employed by the company by renting them to shippers, who took possession of them from time to time at Milwaukee, Wisconsin, and used them for the carriage of freight in the United States, Canada and Mexico, the company being paid by the railroads in proportion to the mileage made over their lines; that the correct method of ascertaining the number of cars which should be assessed for taxation was to ascertain and list such a proportion of its cars as, under a system of averages upon their gross earnings, were shown to be used in the State of Kentucky, during the fiscal year, the court finding by this method that

there were subject to assessment in Kentucky twenty-eight cars for the year 1897, twenty-nine for the year 1898, forty for the year 1899, and sixty-seven for 1900.

The court also found that the cars other than those mentioned were not liable to assessment.

The order of the County Court was affirmed by the Circuit Court, and an appeal taken to the Court of Appeals of Kentucky, which reversed the judgment of the court below, and found that the company was liable to taxation upon its entire number of two thousand cars, and directed the court below to enter judgment against it for the taxes appropriate to this number. 80 S. W. Rep. 490.

To review this judgment this writ of error was sued out.

*Mr. William H. Field* and *Mr. Alexander P. Humphrey* for plaintiff in error:

Section 4020, Kentucky Statutes, as applied in this case violates the provisions of the Fourteenth Amendment.

The legislature of Kentucky had no power to authorize the assessment for taxation of tangible personal property which has acquired a taxable *situs* outside the territorial limits of the State and in other jurisdictions.

The growth of the country has produced properties which lie partly in one and partly in another sovereignty and it is competent, in ascertaining the value of such property for taxation, to consider the value of the whole as affecting the value of each part. *West. Un. Tel. Co.* v. *Taggart*, 163 U. S. 1; *Pittsburg, Cincinnati &c. Ry.* v. *Backus*, 154 U. S. 439. Property also which, while not connected into one whole as a railroad may be considered by the union of its rails, or a telegraph line by the union of its wires, may yet, through a unity of use, take a character similar to a physical unity. In such cases a State, in valuing that part within the sovereignty, may take into consideration the value of the whole. *Adams Exp. Co.* v. *Ohio*, 165 U. S. 194; *Adams Exp. Co.* v. *Indiana*, 165 U. S. 194; *Adams Exp. Co.* v. *Kentucky*, 166 U. S. 172.

So also as to vessels plying the ocean or rivers. In *Hays* v. *Pacific Mail*, 17 How. 596; *Morgan* v. *Parham*, 16 Wall. 471; *St. Louis* v. *Ferry Co.*, 11 Wall. 423; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Old Dominion S. S. Co.* v. *Virginia*, 198 U. S. 299, the tax was held valid or invalid in accordance with the determination of the actual *situs*. So also in reference to ordinary personal property. In *State Tax on Foreign-held Bonds*, 15 Wall. 300, the State could tax bonds of Pennsylvania corporations held by non-residents of Pennsylvania. *Blackstone* v. *Miller*, 188 U. S. 212, held that this decision has been cut down to the precise point that the bonds could not be taxed because they were held out of the State. And see as to the right of States to tax personal property in the State notwithstanding the fact that the owner is not in the State. *Coe* v. *Errol*, 116 U. S. 524; *Diamond Match Co.* v. *Ontonagon*, 188 U. S. 93; *Brown* v. *Houston*, 114 U. S. 622; *Pittsburg Coal Co.* v. *Bates*, 156 U. S. 577; *New Orleans* v. *Stempel*, 175 U. S. 309; *Bristol* v. *Washington County*, 177 U. S. 145.

It is impossible to ascertain how many cars constantly moving are in any State on any named day and a State has a right to devise a fair method of ascertaining the average number without regard to what is the particular car and to tax the average number of cars in the State although the owner may be a non-resident corporation. *Pullman Co.* v. *Pennsylvania*, 141 U. S. 22; *Am. Refrigerator Co.* v. *Hall*, 174 U. S. 70; *Union Refrigerator Co.* v. *Lynch*, 177 U. S. 149.

These cases establish that personal property capable of acquiring a *situs* separate from the domicil of the owner can be taxed where it has acquired such *situs* and that the rule of *mobilia sequuntur personam* is a fiction which must give way to facts, and has been broken down upon that side. See also *D., L. & W.* v. *Pennsylvania*, 198 U. S. 341.

The right to tax personalty as well as realty rests upon the fact that such personalty as well as realty is situated within the territorial jurisdiction of the sovereignty levying the tax. The domicil of the owner is an immaterial circumstance in the

case of personal as well as of real property and property of the character sought to be reached in this case is capable of acquiring and does acquire a *situs* in every sovereignty in which it is used.

Either personal property may be taxed both by the State in which its owner resides and by the State in which it has its *situs,* or alone by the State in which it has its *situs.* The absence of the owner does not exclude power to tax, and the absence of the property excludes the power to tax, in other words, that actual *situs* is as essential an element of the power to tax in the case of personal property as in the case of real property. Revenue statutes of a State can have no extraterritorial effect and cannot affect property, the taxable *situs* of which is elsewhere. The cars of this plaintiff in error have a taxable *situs* outside of Kentucky, and this court has upheld their taxation elsewhere. *Transit Co.* v. *Lynch,* 177 U. S. 149.

It is thus established beyond question that these cars of the plaintiff in error actually acquire a *situs* of their own, distinct from the domicil of their owner, beyond the territorial limits of the State of Kentucky, and that they are subject to taxation by those jurisdictions in which they may be found. 1 Cooley, Taxation, 3d. ed., 84.

"Taxation and protection are reciprocal," and in the foundation of the Government's right to tax the property of its citizens there lies the corresponding duty upon the Government to protect that property. 1 Cooley on Taxation, 3d ed., 2, 22, 27; Rorer on Interstate Law, 204; *State* v. *Falkenbridge,* 3 Green (N. J.), 320; *Wilkey* v. *City of Pekin,* 19 Illinois, 160; *New Orleans* v. *Stempel,* 175 U. S. 310; *People* v. *Commissioner,* 35 N. Y. 441; *Pullman* v. *Twombley,* 29 Fed. Rep. 658; *Baldwin* v. *Shine,* 84 Kentucky, 502.

This being a fundamental principle of taxation, a State which assumes the right to tax property that is situated beyond its limits cannot perform the corresponding duty to protect that property. As the property is protected by the State wherein

it is located, in return for that protection there arises to that State the right of taxation. A State which can afford no protection to property, because the property is not within its limits, has, in reason, no right to exercise the power of taxation, for there is no consideration therefor. *Ferry Co.* v. *Kentucky*, 188 U. S. 394; *D., L. & W.* v. *Pennsylvania*, 198 U. S. 341.

*Mr. Henry L. Stone*, with whom *Mr. Samuel B. Kirby* and *Mr. Robert W. Bingham* were on the brief, for defendant in error:

Plaintiff in error is liable to taxation in the place of its domicil, on all of its tangible personal property.

The general assembly of the State of Kentucky had power and jurisdiction to provide that the personal property of all residents of that State, or of corporations organized under the laws of that State, whether in or out of that State, should be taxed in that State. 1 Cooley on Taxation, 3d ed., 86; *Commonwealth* v. *Hays*, 2 B. Mon. 1; *Barret* v. *Henderson*, 4 Bush. 255; act of 1852, 2 Stant. Rev. Stat. Kentucky, 253; act of 1886, §§ 3, 12, art. I, Gen'l Stat. Kentucky, 1887, pp. 1035, 1038.

Where one is taxed for his personalty at the place of domicil, it is in general immaterial that some or even the whole of it is at the time out of the State. Cooley on Tax., 3d ed., 644, citing *Boyd* v. *Selma*, 96 Alabama, 150; *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *Goldgart* v. *People*, 106 Illinois, 25; *Foresman* v. *Byrns*, 68 Indiana, 247; *Lose* v. *State*, 72 Indiana, 285; *Griffith* v. *Watson*, 19 Kansas, 23; *Commonwealth* v. *Hays*, 8 B. Mon. 1; *Frothingham* v. *Snow*, 175 Massachusetts, 59; *Horne* v. *Green*, 52 Mississippi, 452.

The proper place for the taxation of a corporation in respect to its personalty is the place of its principal office, unless some other rule is prescribed by statute. 25 Am. & Eng. Ency. of Law, 152, title "Taxation;" Burroughs on Tax., 186; *Pullman Co.* v. *Pennsylvania*, 141 U. S. 18, 36.

Double taxation in the same State not forbidden by the

state constitution may be valid. *Bank* v. *Pierce Co.*, 20 Washington, 675; *State* v. *Branin*, 23 N. J. L. 484; *People* v. *Roberts*, 32 App. Div. N. Y. 113; *Tennessee* v. *Whitworth*, 117 U. S. 136; *Bank* v. *Coleman*, 135 N. Y. 231.

Taxation is not double unless it bears upon the same property, within the same jurisdiction. *Bradley* v. *Bauder* (Ohio), 19 Am. L. Reg. (N. S.) 774. It is not double taxation when the same property is taxed for the same year in two different States or taxing jurisdictions, where each has a right to lay taxes thereon. *Grigsby Construction Co.* v. *Freeman*, 108 Louisiana, 435.

The legislature, following the adoption of the present constitution of the State of Kentucky, by the enactment of the revenue law of November 11, 1892, which contained section 4020, endeavored to reach all property that could be lawfully made subject to taxation in that State.

In the absence of a statute a State cannot tax property such as that of the plaintiff in error, used as it is, passing into or through a State, and acquiring no permanent *situs* therein. *Indiana* v. *Pullman Car Co.*, 16 Fed. Rep. 193; *Pullman Co.* v. *Nolan*, 22 Fed. Rep. 276; *Irwin* v. *New Orleans, St. L. & C. R. Co.*, 94 Illinois, 105; *Tax Court* v. *Pullman Co.*, 50 Maryland, 452. In some States statutes to that effect have been declared unconstitutional. *State* v. *Stephens*, 146 Missouri, 662.

It is only by virtue of a local statute that the taxation of a proportion of such property on the basis of mileage or gross earnings can be sustained in a State other than that of the domicil of the owner. *Pullman Co.* v. *Pennsylvania*, 141 U. S. 18, 36; *American Refrigerator Transit Co.* v. *Hall*, 174 U. S. 70, 82; *Union Refrigerator Transit Co.* v. *Lynch*, 177 U. S. 149.

No such statute has been enacted in Kentucky. No method has been devised for the assessment of a portion of the tangible property, consisting of cars passing over railroad lines into and through that State and acquiring no permanent *situs*, on the

basis of mileage or gross earnings, either by the Railroad Commission, Board of Valuation and Assessment, or the county assessor.

Plaintiff in error did not show that it had been taxed on cars in other States. It should not be allowed to shelter itself under the plea that it is in the power of other States and countries to tax its cars on the basis of mileage or gross earnings, without showing that power has been exercised by legislation in such States and countries, respectively, and that it has paid taxes thereunder.

The right to tax the movable personal or tangible property of the plaintiff in error is not based on the principle that the laws of the State of the domicil of plaintiff in error protect such property, but on the solid ground that the laws of that State protect such domestic corporation, the person of the owner of such property, and, as a consideration for such protection, that State is entitled to tax all of its personal property, because it is a creature of the laws of that State. *Norfolk & Western* v. *Board of Public Works*, 97 Virginia, 23; *Commonwealth* v. *Dredging Co.*, 122 Pa. St. 386; *Swift's Estate*, 137 N. Y. 77; *Leonard* v. *New Bedford*, 16 Gray, 292; *Baltimore* v. *Railroad Co.*, 50 Maryland, 274; *Baltimore* v. *Northern Central*, 50 Maryland, 417.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

In this case the question is directly presented whether a corporation organized under the laws of Kentucky is subject to taxation upon its tangible personal property, permanently located in other States, and employed there in the prosecution of its business. Such taxation is charged to be a violation of the due process of law clause of the Fourteenth Amendment.

Section 4020 of the Kentucky statutes, under which this assessment was made, provides that "All real and personal estate within this State, and all personal estate of persons re-

siding in this State, and of all corporations organized under
the laws of this State, whether the property be in or out of this
State, ⌐ .   .   .   shall be subject to taxation, unless the same
be exempt from taxation by the Constitution, and shall be
assessed at its fair cash value, estimated at the price it would
bring at a fair voluntary sale."

That the property taxed is within this description is beyond
controversy. The constitutionality of the section was at-
tacked not only upon the ground that it denied to the Transit
Company due process of law, but also the equal protection of
the laws, in the fact that railroad companies were only taxed
upon the value of their rolling stock used within the State,
which was determined by the proportion which the number of
miles of the railroad in the State bears to the whole number of
miles operated by the company.

The power of taxation, indispensable to the existence of every
civilized government, is exercised upon the assumption of an
equivalent rendered to the taxpayer in the protection of his
person and property, in adding to the value of such property,
or in the creation and maintenance of public conveniences in
which he shares, such, for instance, as roads, bridges, sidewalks,
pavements, and schools for the education of his children. If
the taxing power be in no position to render these services, or
otherwise to benefit the person or property taxed, and such
property be wholly within the taxing power of another State,
to which it may be said to owe an allegiance and to which it
looks for protection, the taxation of such property within the
domicil of the owner partakes rather of the nature of an ex-
tortion than a tax, and has been repeatedly held by this court
to be beyond the power of the legislature and a taking of prop-
erty without due process of law. *Railroad Company* v. *Jack-
son,* 7 Wall. 262; *State Tax on Foreign-held Bonds,* 15 Wall.
300; *Tappan* v. *Merchants' National Bank,* 19 Wall. 490, 499;
*Delaware &c. R. R. Co.* v. *Pennsylvania,* 198 U. S. 341, 358.
In *Chicago &c. R. R. Co.* v. *Chicago,* 166 U. S. 226, it was held,
after full consideration, that the taking of private property

without compensation was a denial of due process within the Fourteenth Amendment. See also *Davidson v. New Orleans,* 96 U. S. 97, 102; *Missouri Pacific Railway* v. *Nebraska,* 164 U. S. 403, 417; *Mount Hope Cemetery* v. *Boston,* 158 Massachusetts, 509, 519.

Most modern legislation upon this subject has been directed (1) to the requirement that every citizen shall disclose the amount of his property subject to taxation and shall contribute in proportion to such amount; and (2) to the voidance of double taxation. As said by Adam Smith in his "Wealth of Nations," Book V., Ch. 2, Pt. 2, "the subjects of every State ought to contribute towards the support of the Government as nearly as possible in proportion to their respective abilities; that is, in proportion to the revenue which they respectively enjoy under the protection of the State. The expense of Government to the individuals of a great nation is like the expense of management to the joint tenants of a great estate, who are all obliged to contribute in proportion to their respective interest in the estate. In the observation or neglect of this maxim consists what is called equality or inequality of taxation."

But notwithstanding the rule of uniformity lying at the basis of every just system of taxation, there are doubtless many individual cases where the weight of a tax falls unequally upon the owners of the property taxed. This is almost unavoidable under every system of direct taxation. But the tax is not rendered illegal by such discrimination. Thus every citizen is bound to pay his proportion of a school tax, though he have no children; of a police tax, though he have no buildings or personal property to be guarded; or of a road tax, though he never use the road. In other words, a general tax cannot be dissected to show that, as to certain constituent parts, the taxpayer receives no benefit. Even in case of special assessments imposed for the improvement of property within certain limits, the fact that it is extremely doubtful whether a particular lot can receive any benefit from the improvement does not invalidate the tax with respect to such lot. *Kelly* v. *Pitts-*

*burgh,* 104 U. S. 78; *Amesbury Nail Factory Co.* v. *Weed,* 17 Massachusetts, 53; *Thomas* v. *Gay,* 169 U. S. 264; *Louisville &c. R. R. Co.* v. *Barber Asphalt Co.,* 197 U. S. 430. Subject to these individual exceptions, the rule is that in classifying property for taxation some benefit to the property taxed is a controlling consideration, and a plain abuse of this power will sometimes justify a judicial interference. *Norwood* v. *Baker,* 172 U. S. 269. It is often said protection and payment of taxes are correlative obligations.

It is also essential to the validity of a tax that the property shall be within the territorial jurisdiction of the taxing power. Not only is the operation of state laws limited to persons and property within the boundaries of the State, but property which is wholly and exclusively within the jurisdiction of another State, receives none of the protection for which the tax is supposed to be the compensation. This rule receives its most familiar illustration in the cases of land which, to be taxable, must be within the limits of the State. Indeed, we know of no case where a legislature has assumed to impose a tax upon land within the jurisdiction of another State, much less where such action has been defended by any court. It is said by this court in the *Foreign-held Bond case,* 15 Wall. 300, 319, that no adjudication should be necessary to establish so obvious a proposition as that property lying beyond the jurisdiction of a State is not a subject upon which her taxing power can be legitimately exercised.

The argument against the taxability of land within the jurisdiction of another State applies with equal cogency to tangible personal property beyond the jurisdiction. It is not only beyond the sovereignty of the taxing State, but does not and cannot receive protection under its laws. True, a resident owner may receive an income from such property, but the same may be said of real estate within a foreign jurisdiction. Whatever be the rights of the State with respect to the taxation of such income, it is clearly beyond its power to tax the land from which the income is derived. As we said in *Louis-*

*ville &c. Ferry Co.* v. *Kentucky,* 188 U. S. 385, 396: "While
the mode, form and extent of taxation are, speaking generally,
limited only by the wisdom of the legislature, that power is
limited by principle inhering in the very nature of constitu-
tional Government, namely, that the taxation imposed must
have relation to a subject within the jurisdiction of the tax-
ing Government." See also *McCulloch* v. *Maryland,* 4 Wheat.
316, 429; *Hays* v. *Pacific Mail S. S. Co.,* 17 How. 596, 599; *St.
Louis* v. *Ferry Co.,* 11 Wall. 423, 429, 431; *Morgan* v. *Parham,*
16 Wall. 471, 476.

Respecting this, there is an obvious distinction between the
tangible and intangible property, in the fact that the latter is
held secretly; that there is no method by which its existence
or ownership can be ascertained in the State of its *situs,* except
perhaps in the case of mortgages or shares of stock. So if the
owner be discovered, there is no way by which he can be reached
by process in a State other than that of his domicil, or the col-
lection of the tax otherwise enforced. In this class of cases
the tendency of modern authorities is to apply the maxim
*mobilia sequuntur personam,* and to hold that the property may
be taxed at the domicil of the owner as the real *situs* of the
debt, and also, more particularly in the case of mortgages, in
the State where the property is retained. Such has been the
repeated rulings of this court. *Tappan* v. *Merchants' National
Bank,* 19 Wall. 490; *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *Bona-
parte* v. *Tax Court,* 104 U. S. 592; *Sturges* v. *Carter,* 114 U. S.
511; *Kidd* v. *Alabama,* 188 U. S. 730; *Blackstone* v. *Miller,* 188
U. S. 189.

If this occasionally results in double taxation, it much oftener
happens that this class of property escapes altogether. In the
case of intangible property, the law does not look for absolute
equality, but to the much more practical consideration of col-
lecting the tax upon such property, either in the State of the
domicil or the *situs.* Of course, we do not enter into a considera-
tion of the question, so much discussed by political economists,
of the double taxation involved in taxing the property from

which these securities arise, and also the burdens upon such property, such as mortgages, shares of stock and the like—the securities themselves.

The arguments in favor of the taxation of intangible property at the domicil of the owner have no application to tangible property. The fact that such property is visible, easily found and difficult to conceal, and the tax readily collectible, is so cogent an argument for its taxation at its *situs*, that of late there is a general consensus of opinion that it is taxable in the State where it is permanently located and employed and where it receives its entire protection, irrespective of the domicil of the owner. We have, ourselves, held in a number of cases that such property permanently located in a State other than that of its owner is taxable there. *Brown* v. *Houston,* 114 U. S. 622; *Coe* v. *Errol,* 116 U. S. 517; *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 18; *Western Union Telegraph Co.* v. *Massachusetts,* 125 U. S. 530; *Railroad Company* v. *Peniston,* 18 Wall. 5; *American Refrigerator Transit Company* v. *Hall,* 174 U. S. 70; *Pittsburg Coal Company* v. *Bates,* 156 U. S. 577; *Old Dominion Steamship Company* v. *Virginia,* 198 U. S. 299. We have also held that, if a corporation be engaged in running railroad cars into, through and out of the State, and having at all times a large number of cars within the State, it may be taxed by taking as the basis of assessment such proportion of its capital stock as the number of miles of railroad over which its cars are run within the State bears to the whole number of miles in all the States over which its cars are run. *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 18.

There are doubtless cases in the state reports announcing the principle that the ancient maxim of *mobilia sequuntur personam* still applies to personal property, and that it may be taxed at the domicil of the owner, but upon examination they all or nearly all relate to intangible property, such as stocks, bonds, notes and other choses in action. We are cited to none applying this rule to tangible property, and after a careful examination have not been able to find any wherein the ques-

tion is squarely presented, unless it be that of *Wheaton* v. *Mickel*, 63 N. J. Law, 525, where a resident of New Jersey was taxed for certain coastwise and seagoing vessels located in Pennsylvania. It did not appear, however, that they were permanently located there. The case turned upon the construction of a state statute, and the question of constitutionality was not raised. If there are any other cases holding that the maxim applies to tangible personal property, they are wholly exceptional, and were decided at a time when personal property was comparatively of small amount, and consisted principally of stocks in trade, horses, cattle, vehicles and vessels engaged in navigation. But in view of the enormous increase of such property since the introduction of railways and the growth of manufactures, the tendency has been in recent years to treat it as having a *situs* of its own for the purpose of taxation, and correlatively to exempt at the domicil of its owner. The cases in the state reports upon this subject usually turn upon the construction of local statutes granting or withholding the right to tax extra-territorial property, and do not involve the constitutional principle here invoked. Many of them, such, for instance, as *Blood* v. *Sayre*, 17 Vermont 609; *Preston* v. *Boston*, 12 Pickering, 7; *Pease* v. *Whitney*, 8 Massachusetts 93; *Gray* v. *Kettel*, 12 Massachusetts, 161, turn upon the taxability of property where the owner is located in one, and the property in another, of two jurisdictions within the same State, sometimes even involving double taxation, and are not in point here.

One of the most valuable of the state cases is that of *Hoyt* v. *Commissioners of Taxes*, 23 N. Y. 224, where, under the New York statute, it was held that the tangible property of a resident actually situated in another State or country was not to be included in the assessment against him. The statute declared that "all lands and all personal estate within this State" were liable for taxation, and it was said in a most instructive opinion by Chief Justice Comstock that the language could not be obscured by the introduction of a legal fiction about the

*situs* of personal estate. It was said that this fiction involved
the necessary consequence that "goods and chattels actually
within this State are not here in any legal sense, or for any
legal purpose, if the owner resides abroad;" and that the maxim
*mobilia sequuntur personam* may only be resorted to when con-
venience and justice so require. The proper use of legal fiction
is to prevent injustice, according to the maxim "*in fictione
juris semper æquitas existat.*" See *Eidman* v. *Martinez*, 184
U. S. 578; *Blackstone* v. *Miller*, 188 U. S. 189, 206. "No fic-
tion," says Blackstone, "shall extend to work an injury; its
proper operation being to prevent a mischief or remedy an in-
convenience, which might result from a general rule of law."
The opinion argues with great force against the injustice of
taxing extra-territorial property, when it is also taxable in the
State where it is located. Similar cases to the same effect are
*People* v. *Smith*, 88 N. Y. 576; *City of New Albany* v. *Meekin*,
3 Indiana, 481; *Wilkey* v. *City of Pekin*, 19 Illinois,160; *Johnson*
v. *Lexington*, 14 B. Monroe, 521; *Catlin* v. *Hull*, 21 Vermont,
152; *Nashua Bank* v. *Nashua*, 46 N. H. 389.

In *Weaver's Estate* v. *State*, 110 Iowa, 328, it was held by the
Supreme Court of Iowa that a herd of cattle within the State of
Missouri, belonging to a resident of Iowa, was not subject to
an inheritance tax upon his decease. In *Commonwealth* v.
*American Dredging Company*, 122 Penna. St. 386, it was held
that a Pennsylvania corporation was taxable in respect to
certain dredges and other similar vessels which were built,
but not permanently retained outside of the State. It was
said that the non-taxability of tangible personal property
located permanently outside of the State was not "because of
the technical principle that the *situs* of personal property is
where the domicil of the owner is found. This rule is doubt-
less true as to intangible property such as bonds, mortgages
and other evidences of debt. But the better opinion seems to
be that it does not hold in the case of visible tangible personal
property permanently located in another State. In such cases
it is taxable within the jurisdiction where found and is exempt

at the domicil of the owner." The property in that case, however, was held not to be permanently outside of the State, and therefore not exempt from taxation. The rule, however, seems to be well settled in Pennsylvania that so much of the tangible property of a corporation as is situated in another State, and there employed in its corporate business, is not taxable in Pennsylvania. *Commonwealth* v. *Montgomery &c. Mining Co.,* 5 Pa. County Courts Rep. 89; *Commonwealth* v. *Railroad Co.,* 145 Pa. St. 96; *Commonwealth* v. *Westinghouse Mfg. Co.,* 151 Pa. St. 265; *Commonwealth* v. *Standard Oil Co.,* 101 Pa. St. 119. The rule is the same in New York. *Pacific Steamship Company* v. *Commissioners,* 46 How. Pr. 315.

But there are two recent cases in this court which we think completely cover the question under consideration and require the reversal of the judgment of the state court. The first of these is that of the *Louisville &c. Ferry Co.* v. *Kentucky,* 188 U. S. 385. That was an action to recover certain taxes imposed upon the corporate franchise of the defendant company, which was organized to establish and maintain a ferry between Kentucky and Indiana. The defendant was also licensed by the State of Indiana. We held that the fact that such franchise had been granted by the Commonwealth of Kentucky did not bring within the jurisdiction of Kentucky for the purpose of taxation the franchise granted to the same company by Indiana, and which we held to be an incorporeal hereditament derived from and having its legal *situs* in that State. It was adjudged that such taxation amounted to a deprivation of property without due process of law, in violation of the Fourteenth Amendment, as much so as if the State taxed the land owned by that company; and that the officers of the State had exceeded their power in taxing the whole franchise without making a deduction for that obtained from Indiana, the two being distinct, "although the enjoyment of both are essential to a complete ferry right for the transportation of persons and property across the river both ways."

The other and more recent case is that of the *Delaware &c.*

*Railroad. Co.* v. *Pennsylvania,* 198 U. S. 341. That was an assessment upon the capital stock of the railroad company, wherein it was contended that the assessor should have deducted from the value of such stock certain coal mined in Pennsylvania and owned by it, but stored in New York, there awaiting sale, and beyond the jurisdiction of the Commonwealth at the time appraisement was made. This coal was taxable, and in fact was taxed in the State where it rested for the purposes of sale at the time when the appraisement in question was made. Both this court and the Supreme Court of Pennsylvania had held that a tax on the corporate stock is a tax on the assets of the corporation issuing such stock. The two courts agreed in the general proposition that tangible property permanently outside of the State, and having no *situs* within the State, could not be taxed. But they differed upon the question whether the coal involved was permanently outside of the State. In delivering the opinion it was said: "However temporary the stay of the coal might be in the particular foreign States where it was resting at the time of the appraisement, it was definitely and forever beyond the jurisdiction of Pennsylvania. And it was within the jurisdiction of the foreign States for purposes of taxation, and in truth it was there taxed. We regard this tax as in substance and in fact, though not in form, a tax specifically levied upon the property of the corporation, and part of that property is outside and beyond the jurisdiction of the State which thus assumes to tax it." The decision in that case was really broader than the exigencies of the case under consideration required, as the tax was not upon the personal property itself but upon the capital stock of a Pennsylvania corporation, a part of which stock was represented by the coal, the value of which was held should have been deducted.

The adoption of a general rule that tangible personal property in other States may be taxed at the domicil of the owner involves possibilities of an extremely serious character. Not only would it authorize the taxation of furniture and other

property kept at country houses in other States or even in foreign countries, of stocks of goods and merchandise kept at branch establishments when already taxed at the State of their *situs*, but of that enormous mass of personal property belonging to railways and other corporations which might be taxed in the State where they are incorporated, though their charters contemplated the construction and operation of roads wholly outside the State, and sometimes across the continent, and when in no other particular they are subject to its laws and entitled to its protection. The propriety of such incorporations, where no business is done within the State, is open to grave doubt, but it is possible that legislation alone can furnish a remedy.

Our conclusion upon this branch of the case renders it unnecessary to decide the second question, viz: Whether the Transit Company was denied the equal protection of the laws.

It is unnecessary to say that this case does not involve the question of the taxation of intangible personal property, or of inheritance or succession taxes, or of questions arising between different municipalities or taxing districts within the same State, which are controlled by different considerations.

We are of opinion that the cars in question, so far as they were located and employed in other States than Kentucky, were not subject to the taxing power of that Commonwealth, and that the judgment of the Court of Appeals must be reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion.

Mr. Justice White concurred in the result.

Mr. Justice Holmes: It seems to me that the result reached by the court probably is a desirable one, but I hardly understand how it can be deduced from the Fourteenth Amendment, and as the Chief Justice feels the same difficulty, I think it proper to say that my doubt has not been removed.