*Beals, Sweeney & Jerue, Richard P. Kearns,* for plaintiff.

*Sidney Clifford, Jr.,* for defendants.

252 A.2d 340.

HEMINGWAY TRANSPORT, INC. *vs.* TAX ASSESSOR OF THE CITY OF EAST PROVIDENCE.

APRIL 18, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. The plaintiff, a corporation organized under the laws of Massachusetts and having its principal place of business in that state, challenges the validity of an ad valorem tax assessed against its motor vehicles by the tax assessor of the city of East Providence as of December 31 in the years 1962 through 1965, inclusive. After the respective assessments had been paid under protest, the plaintiff commenced proceedings in the superior court alleging

violations of the interstate commerce, equal protection of the laws, and due process clauses of the federal constitution. In an exhaustive and well-reasoned rescript a superior court justice found that the assessor had exceeded his authority when he assessed a tax based upon the value of each vehicle in the fleet. He did not find, however, that the entire tax was illegal, but found instead, that the daily average number of vehicles located within the city's territorial limits during the years in question could be legally taxed. Since only the defendant has appealed, our concern is with the taxability of the entire fleet, and not with either the justness of the apportionment, or with whether, in the absence of any statutory authority, it was proper to apportion the tax.

We discuss only the case involving the tax assessed as of December 31, 1962, — conmmonly referred to as the 1963 tax—but what we say with respect to it applies equally in the other three cases each of which involves a different tax assessment.

The essential facts are either stipulated or not in dispute. The plaintiff, an interstate motor carrier, is engaged in the business of transporting merchandise for compensation. It has terminal facilities located in several states including one in East Providence. It garages and services its motor vehicles in those terminals, and in addition uses them as stations where it picks up, discharges, exchanges and loads the commodities which it carries in interstate commerce.

A substantial number of the motor vehicles used by plaintiff are registered in this state, and in the course of the registration procedure, it completed a card[1] which asked

---

[1]These cards appear to have been used by the registry as a means of acquiring the information needed to comply with G. L. 1956, §31-2-13, pursuant to which it is required as soon as practical after June 1st in each year to furnish "* * * to the board of tax assessors of each city or town in this state a statement of the motor vehicles registered from each said city or town on and after January 1st of the same year * * *."

the question "In what city or town is vehicle to be taxed?" The plaintiff's answer as to each vehicle was "The City of East Providence." The registry of motor vehicles transmitted that information to the assessor who thereafter listed each of the vehicles thus registered in the tax record, valued them in the aggregate at $901,750 and assessed a tax against them based upon that valuation. That assessment was made despite the fact that the total value of plaintiff's motor vehicles located in East Providence on December 31, 1962, (the assessment date) as well as the average valuation of its vehicles located in that city during each day of the years 1962 and 1963 was only $125,000.

The plaintiff challenged the tax substantially on the ground that it was constitutionally impermissible to assess an ad valorem property tax based solely upon the vehicles being registered from East Providence. The problem raised, broadly stated, involves the power of a state to tax movables engaged in interstate commerce. While there may still be uncertainties in the law on that subject, a substantial body of case law from the highest authority establishes, in general, how and in what circumstances and within what constitutional limitations the states may tax.

The starting point is the maxim *mobilia sequuntur personam* which traditionally — and in early times almost exclusively — was the basis for permitting the state of an owner's domicile to tax the full value of his personal property. As the kinds and types of personal property multiplied and as the means of transportation improved, that rule yielded in some degree to the *lex situs* doctrine pursuant to which tangible personalty became taxable where used and kept irrespective of where its owner was domiciled. The application of neither of those concepts, however, provides the complete answer where the subject of the taxation are movable such as the rolling stock of a railroad or the motor vehicles of a carrier engaged in inter-

state commerce, or ships or vessels on the high seas or on inland waters. To accommodate to those situations, the doctrine of just apportionment developed.

That principle permits a nondomiciliary state to tax an interstate carrier engaged in operating vehicles into, through and out of the state, provided the basis of the assessment is a just and equitable formula. *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194, 206, 26 S.Ct. 36, 38, 50 L. Ed. 150, 154. One example of such a formula is the proportion that a taxpayer's railroad track mileage within the taxing state bears to its track mileage within all the states wherein it operates. *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18, 11 S. Ct. 876, 35 L. Ed. 613. Another is based upon the average number of vehicles located within the territorial limits of a taxing state during the tax year. *American Refrigerator Transit Co.* v. *Hall,* 174 U. S. 70, 19 S.Ct. 599, 43 L. Ed. 899.

The general guidelines for determining the justice and equity of the apportionment are that the tax imposed must bear a reasonable relation in its practical operation to the opportunities, the benefits, and the protections conferred or afforded by the taxing jurisdiction. *Ott* v. *Mississippi Valley Barge Line Co.,* 336 U. S. 169, 174, 69 S.Ct. 432, 434, 93 L. Ed. 585, 589. See *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 444, 61 S.Ct. 246, 249-50, 85 L.Ed. 267, 270. In addition, the protection which a nondomiciliary taxing jurisdiction confers or affords must be available throughout the tax year, *Northwest Airlines, Inc.* v. *Minnesota,* 322 U. S. 292, 297, 64 S.Ct. 950, 953, 88 L. Ed. 1283, 1287. These are the requirements which the constitution demands.

The requirements are satisfied and a nondomiciliary tax situs acquired if it can be shown that a fleet of vehicles travels through a state along fixed and regular routes, and in that event a property tax measured by some fair apportioning formula may be imposed. See *Braniff Airways,*

*Inc.* v. *Nebraska State Board of Equalization and Assessment,* 347 U. S. 590, 74 S. Ct. 757, 98 L. Ed. 967. The cases do not insist, however, that the right to tax vehicles engaged in interstate commerce depends upon such vehicles following prescribed routes at fixed times as they proceed through nondomiciliary states. An acceptable alternative is for the vehicles to be habitually employed within the taxing jurisdiction throughout the tax year, and their presence in substantial number, even though on irregular routes and at uncertain times, will suffice for the imposition of a tax based upon the average number so engaged. *Central R.R.* v. *Pennsylvania,* 370 U. S. 607, 615, 82 S. Ct. 1297, 1303, 8 L. Ed.2d 720, 727; *American Refrigerator Transit Co.* v. *Hall, supra,* at 72, 19 S. Ct. at 600, 43 L. Ed. at 900.

Even our brief summary of the general principles governing the law concerning the taxability of movables engaged in interstate commerce makes it obvious that the tax assessed in this case cannot be sustained. Here the entire fleet was taxed. That tax was assessed in the absence of any showing that the fleet traveled through East Providence at fixed times and on regular routes, or that the fleet was habitually employed in that community throughout the tax year, or that it was otherwise protected or benefited by the taxing jurisdiction. Instead, the only stipulation is that a comparatively small percentage of the entire fleet was in East Providence on each day of the year. The factual situation presented is clearly ruled by *Johnson Oil Refining Co.* v. *Oklahoma,* 290 U. S. 158, 54 S. Ct. 152, 78 L. Ed. 238. There the taxpayer, an Illinois corporation, owned a fleet of tank cars used principally in transporting oil from its refinery in Oklahoma for delivery in other states. Those cars were almost continuously in movement and each car on the average was beyond Oklahoma's territorial limits from 20 to 29 days each month. In holding that the tax against the entire fleet was invalid, and that Oklahoma's

power to tax movables engaged in interstate commerce could only be determined on a basis consistent with the exercise of a like power by other states, the court used language which is not only particularly apt, but decisive in this case, at 162-163, 54 S.Ct. at 154, 78 L. Ed. at 242:

> "The basis of the jurisdiction is the habitual employment of the property within the State. By virtue of that employment the property should bear its fair share of the burdens of taxation to which other property within the State is subject. When a fleet of cars is habitually employed in several States — the individual cars constantly running in and out of each State —it cannot be said that any one of the States is entitled to tax the entire number of cars regardless of their use in the other States. When individual items of rolling stock are not continuously the same but are constantly changing, as the nature of their use requires, this Court has held that a State may fix the tax by reference to the average number of cars found to be habitually within its limits. (cites omitted) This principle has had frequent illustration. It was thus stated in *American Refrigerator Transit Co. v. Hall, supra* [p. 82]: 'It having been settled, as we have seen, that where a corporation of one State brings into another, to use and employ, a portion of its movable personal property, it is legitimate for the latter to impose upon such property, thus used and employed, its fair share of the burdens of taxation imposed upon similar property used in like way by its own citizens, we think that such a tax may be properly assessed and collected, in cases like the present, where the specific and individual items of property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business, and that the tax may be fixed by an appraisement and valuation of the average amount of the property thus habitually used and employed.' " (cites omitted)

Notwithstanding the general principles we have alluded to, defendant insists that he had jurisdiction to tax the entire fleet. The common thread running through his argu-

ments is that he could tax the fleet because there is no evidence that any other city or town in this state, or indeed in any other state, had in fact taxed it. Inasmuch as that thread is common to all his arguments and is the principal basis upon which they rest, we comment only upon it. This does not mean, however, that we have not considered his other contentions. He cites in support *Northwest Airlines, Inc.* v. *Minnesota, supra.* That case followed *New York Central & H.R.R.R.* v. *Miller,* 202 U. S. 584, 26 S.Ct. 714, 50 L. Ed. 1155, and was later reaffirmed in *Central R.R.* v. *Pennsylvania, supra.* It involved the taxability by a domiciliary state of an entire fleet of airplanes which, except for brief periods while being serviced in Minnesota, had continuously been engaged throughout the tax year in flying between various states. On these facts, the court held that the mere absence of a determinable portion of the taxpayer's assets from the domiciliary state for a part of the tax year was not sufficient to make a tax by it invalid, and that what was required in order to avoid such a tax was a showing " * * * that a defined part of the domiciliary corpus has acquired a permanent location, i.e., a taxing situs, elsewhere." *Northwest Airlines, Inc.* v. *Minnesota, supra,* at 295, 64 S. Ct. at 952, 88 L. Ed. at 1286.

It is one thing to say, as the court did in *Northwest Airlines,* that an entire fleet which has no taxable situs elsewhere may be taxed by a home state even though it has not been within its boundaries continuously during the tax year; it is quite another thing, however, to say that the failure of any other state to tax confers jurisdiction upon a nondomiciliary state to tax an entire fleet when only a portion has acquired a taxable situs within its boundaries. The power of the home state to tax in these circumstances "derives from the significant legal relation of creator and creature * * *." *Id.* at 294, 64 S. Ct. at 952, 88 L. Ed. at 1286. On that basis alone the domiciliary state can tax

movables which are permanently attributable to it and to no other state. There is no such basis for a nondomiciliary state to impose such a tax. Its jurisdiction to tax is limited to whatever portion of the entire fleet it may have benefited or protected. In this case the portion of the plaintiff's fleet protected or benefited was only that number of vehicles which on the average was habitually present in East Providence throughout the tax year. It follows that the remaining vehicles in the fleet had no taxable situs in East Providence and were therefore not taxable by it.

In each case the defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Francis J. Kiernan, Archibald B. Kenyon, Jr.,* for plaintiff.

*Stephen R. Walsh,* City Solicitor, for defendant.