**STATE of Maine**

v.

**RICHARD L. HODGES, INC.**

Supreme Judicial Court of Maine.

Argued June 20, 1980.

Decided Oct. 1, 1980.

Michael Messerschmidt, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

Law Offices of Burton G. Shiro, Ronald L. Bishop (orally), Waterville, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

GLASSMAN, Justice.

The defendant family corporation, Richard L. Hodges, Inc. (Hodges), seasonally appeals from a judgment of the Superior Court, Kennebec County, entered on February 7, 1980, which found the defendant guilty of allowing an unregistered vehicle to remain on a public way in violation of 29 M.R.S.A. § 102. As its sole contention on appeal, Hodges claims that, as applied to vehicles of Maine residents operated in interstate commerce, the statutory scheme governing the registration of motor vehicles violates the commerce clause, art. I, § 8 of the federal constitution.

The facts of this case are undisputed. Hodges is a Maine corporation engaged in interstate commerce. At the time of the offense in 1978, Hodges operated a fleet of twenty tractor–trailers from its base of operations in Unity. Although fourteen of these vehicles were registered in Maine, the

remaining six trucks, which in 1978 were operated exclusively in interstate commerce, were registered in the state of Florida under the name of R & H Transport, Inc., a fictitious entity not registered as a corporation in any state. Although the only contact Hodges had with Florida in 1978 was that which it had with other states on the eastern seaboard, namely the transportation of goods in and out of the state, it apparently registered these six vehicles in Florida to take advantage of the state's more extensive reciprocity agreements, lack of excise taxes and lower registration fees. On or about April 20, 1978, an employee of Hodges operated one of its Florida–registered trucks on Route 3 in Augusta. Following a bench trial on an agreed statement of facts, Hodges was adjudged guilty of violating 29 M.R.S.A. § 102 and was fined $500.00.

Under 29 M.R.S.A. § 102, "any person, firm or corporation, or owner . . . who fails to register any vehicle to be operated, caused to be operated or remain on any way in this State shall be guilty of a misdemeanor."[1] *Id.* Subchapter II of Chapter 5 of Title 29 delineates the applicable fees for securing a registration to operate a vehicle on the highways of Maine. *Id.*, §§ 241–59 (1978). Payment of the annual excise tax due under 36 M.R.S.A. § 1482 (1978), is a statutory precondition to registration. 29 M.R.S.A. § 109; *accord*, 36 M.R.S.A. § 1486.

The statutory scheme specifically exempts certain persons or vehicles from some of its provisions. Section 2243(1) of 29 M.R.S.A. (1978) exempts from the laws requiring registration and operator's licenses nonresidents who have complied with the registration and licensing statutes of other, reciprocating jurisdictions. *Id.* Section 2243(2) of 29 M.R.S.A. (1978) authorizes the Secretary of State to enter into written reciprocal agreements with other states or countries detailing "the conditions under which residents of such other jurisdiction[s] shall be exempt from the registration or

licensing laws of this State." *Id.* Another provision, 36 M.R.S.A. § 1483(11), exempts from the payment of excise taxes vehicles traveling exclusively in interstate commerce which are "owned in a state wherein an excise or property tax shall have been paid on the vehicle[s], and which grants to Maine owned vehicles" the same exemption. *Id.* No statutory provision, however, provides for an apportionment of registration fees or excise taxes on vehicles owned by a resident and used in interstate commerce, although 29 M.R.S.A. § 2243–A empowers the Secretary of State, with the approval of the Commissioner of Transportation, to execute reciprocal agreements with other jurisdictions "providing for the registration of vehicles on any apportionment or allocation basis." *Id.*

On appeal, Hodges does not argue that its Florida–registered vehicles were exempt from the Maine registration laws or that the State failed to prove beyond a reasonable doubt that the corporation violated 29 M.R.S.A. § 102. Rather, it contends that, as applied to vehicles of Maine residents operated in interstate commerce, the absence of an apportionment provision in the statutory scheme constitutes impermissible multiple taxation of instrumentalities of interstate commerce, *see, e. g., Standard Oil Co. v. Peck*, 342 U.S. 382, 384–85, 72 S.Ct. 309, 310, 96 L.Ed. 427 (1952), arguing that the registration fees and excise taxes imposed by Maine on interstate vehicles of its residents must be apportioned according to the fraction of interstate activity taking place in Maine. On this ground, Hodges maintains that constitutionally it cannot be penalized for failing to register its interstate vehicles in Maine because our statutory scheme requires, as a precondition to registration, the unapportioned payment of registration fees and excise taxes.

Hodges' novel argument has no merit on the facts of this record. In his treatise on constitutional law, Professor Tribe develops from the numerous cases a

1. The penalty is provided in 29 M.R.S.A. § 2303(2). By virtue of 17-A M.R.S.A. § 4-- A(3)(E), the grade of the offense is Class E.

construct delineating the constitutional implications of multi–state taxation[2] of instrumentalities of interstate commerce:

> First, any state may levy an adequately apportioned property tax on those interstate instrumentalities with which it has sufficient contacts.[3]

> .   .   .   .   .

> Second, any state in which a corporation is domiciled may tax at full value that corporation's interstate instrumentalities, but only so long as no showing is made that any of the taxed instrumentalities have an established tax situs in any other state.[4]

> .   .   .   .   .

> Third, if a showing is made that any of the taxed instrumentalities have an established tax situs in any other state, the domiciliary state may validly tax those instrumentalities only on an apportioned basis.[5] L. Tribe, *American Constitutional Law* § 6–19 (1978) (emphasis deleted).

*See also Billings Transfer Corp. v. County of Davidson*, 276 N.C. 19, 170 S.E.2d 873 (1969) (summarizing cases). The burden is on the taxpayer to prove that "a defined part of the domiciliary corpus" has acquired during the tax year in question an actual tax situs elsewhere. *Central Railroad v. Pennsylvania*, 370 U.S. 607, 613, 82 S.Ct. 1297, 1302, 8 L.Ed.2d 720 (1962). A tax situs in a particular non–domiciliary state may be established if the taxed instrumentalities "traveled through [that state] along fixed and regular routes," *id.* at 614, 82 S.Ct. at 1303, or by "[h]abitual employment within the State of a substantial number of [the vehicles], albeit on irregular routes,"[6] *id.* at 615, 82 S.Ct. at 1303; *e. g., Upper Missouri River Corp. v. Board of Review*, 210 N.W.2d 828, 830 (Iowa 1973); *Billings Transfer Corp. v. County of Davidson, supra*, 276 N.C. at 33, 170 S.E.2d at 884; *Hemingway Transport, Inc. v. Tax Assessor*, 105 R.I. 411, 415, 252 A.2d 340, 343 (1969).

▮▮▮ Hodges has failed to show that in 1978 any of its vehicles acquired, either through "fixed and regular routes" or "habitual presence," a tax situs in a state other than Maine. It avails Hodges nothing to establish that the six Florida–registered vehicles operated exclusively in interstate commerce during that year.[7] Nothing in

---

**2.** We intimate no opinion on the question whether vehicle registration fees are "taxes" for purposes of commerce clause analysis.

**3.** *E. g., Braniff Airways, Inc. v. Nebraska State Bd. of Equalization*, 347 U.S. 590, 600–01, 74 S.Ct. 757, 763–64, 98 L.Ed. 967 (1954). This nexus requirement is a due process limitation on state legislative jurisdiction. *See, e. g., Union Refrigerator Transit Co. v. Kentucky*, 199 U.S. 194, 202–03, 26 S.Ct. 36, 36–37, 50 L.Ed. 150 (1905).

**4.** *E. g., Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 295, 64 S.Ct. 950, 952, 88 L.Ed. 1283 (1944). The inquiry is not whether the property *is* subject to tax in another state but whether it *could* be taxed on the basis of sufficient contacts with the non–domiciliary state. *Central R.R. v. Pennsylvania*, 370 U.S. 607, 614, 82 S.Ct. 1297, 1302, 8 L.Ed.2d 720 (1962). As a matter of due process, the domiciliary state cannot tax tangible personal property which is permanently located outside of the state. *E. g., Union Refrigerator Transit Co. v. Kentucky, supra*, 199 U.S. at 204–05, 26 S.Ct. at 37–38.

**5.** *E. g., Central R.R. v. Pennsylvania, supra*, 370 U.S. at 614, 82 S.Ct. at 1302. The doctrine of tax apportionment to avoid the cumulative burden of state taxation engendered by multiple taxation of interstate instrumentalities traces its roots to *Pullman's Palace Car Co. v. Pennsylvania*, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613 (1891).

**6.** Proof of "habitual presence" would permit taxation by the non–domiciliary state based on the average number of vehicles continuously present in that state. *Central R.R. v. Pennsylvania, supra*, 370 U.S. at 615, 82 S.Ct. at 1303.

**7.** An interstate carrier cannot avoid the imposition of property taxes on the full value of its assets merely by showing that some determinable portion of its assets was outside of the jurisdiction for part of the tax year. *E. g., New York Cent. R.R. v. Miller*, 202 U.S. 584, 596–98, 26 S.Ct. 714, 716–17, 50 L.Ed. 1155 (1906). Hodges also points to the "higher costs" of transporting goods to and from states with whom Maine has no reciprocity agreements. Whether any other state had in fact imposed a property tax on these vehicles is irrelevant to the inquiry whether the vehicles had acquired an actual tax situs in another state. *See Northwest Airlines, Inc. v. Minnesota, supra*, 322 U.S. at 295, 64 S.Ct. at 952. In addition, Hodg-

this record indicates the nature or extent of the contacts between Hodges' rolling stock and other jurisdictions. In short, there is nothing to suggest that any non–domiciliary state could constitutionally impose a property tax on any of Hodges' vehicles.

The entry is:

Judgment affirmed.

All concurring.

es' spurious registration of six of its vehicles in Florida clearly has no bearing on its commerce clause claim.