[Cite as *Datillo v. Euclid*, 2013-Ohio-4807.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99849**

## ALBERT DATILLO

PLAINTIFF-APPELLANT

vs.

## CITY OF EUCLID, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-796396

**BEFORE:** Kilbane, J., E.A. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** October 31, 2013

**ATTORNEYS FOR APPELLANT**

Nicole T. Fiorelli
Patrick J.    Perotti
Dworken & Berstein Co., L.P.A.
60 South Park Place
Painesville, Ohio      44077

**ATTORNEYS FOR APPELLEES**

Steven A. Friedman
Bruce A. Khula
Squire Sanders L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114

L. Christopher Frey
Law Director
City of Euclid
585 East 222nd Street
Euclid, Ohio   44123

MARY EILEEN KILBANE, J.:

{¶1}   Plaintiff-appellant, Albert Datillo, an individual who works in the city of Euclid but does not reside there, appeals from the order of the trial court that dismissed his class action complaint for a refund of income taxes collected by the city of Euclid-Euclid School District's shared taxing district.  For the reasons set forth below, we affirm.

{¶2}   Effective April 16, 1993, the General Assembly enacted 1991 Ohio S.B. No. 190 that provided for the creation of shared income tax districts pursuant to which a municipal corporation and a city, local, or exempted village school district may agree to share proceeds of an income tax set forth in R.C. 718.09.  Pursuant to former R.C. 718.09(B):

> The legislative authority of a municipal corporation * * * may propose to the electors an income tax, one of the purposes of which shall be to provide financial assistance to the school district through payment to the district of not less than twenty-five percent of the revenue generated by the tax.  * * *.

*Accord* 1996 Ohio Atty.Gen.Ops. No. 96-012. In that opinion, the attorney general explained that "a shared income tax is structured as a municipal income tax," and points out that one of its purposes is to provide financial assistance to the school district through payment to the district of not less than 25 percent of the revenue generated by the tax.

{¶3}   Under the former version of R.C. 718.09, the municipality and the board of education established a tax rate, a percentage of tax revenue to be paid to the school district, the purpose for which the school district was to use the money, and the schedule

of payments to the school district. *Id.* The municipality then enacted an ordinance containing these provisions. *Id*.

{¶4} As originally enacted, the shared income tax contemplated within former R.C. 718.09 was based upon income earned within the municipality. R.C. 718.09 (1993). Accordingly, both residents and nonresidents of the shared tax district were subject to this tax.

{¶5} On August 22, 1994, acting pursuant to the version of R.C. 718.09 then in effect, the city of Euclid passed Ordinances 200-1994 to amend the city's income tax code. Under this legislation, the city of Euclid increased its municipal income tax rate from 2 percent to 2.85 percent, effective December 1, 1994. Euclid Codified Ordinances Chapter 791. *See generally* 1996 Ohio Atty.Gen.Ops. No. 96-012; *Bosher v. Euclid Income Tax Bd. of Review*, 99 Ohio St.3d 330, 2003-Ohio-3886, 792 N.E.2d 181.

{¶6} Euclid Codified Ordinances 791.01 sets forth the purpose of the levy of income tax and states:

> To provide funds for the purposes of general municipal functions of the City * * *.

{¶7} Euclid Codified Ordinances 791.02 defines income as follows:

> (1) All salaries, wages, commissions, other compensation and other income from whatever source received by residents of the City.

> (2) All salaries, wages, commissions, other compensation and other income from whatever source received by nonresidents for work done or services performed or rendered or activities conducted in the City.

**{¶8}** Euclid Codified Ordinances 791.36 provides for the disbursement of the funds collected and provides in relevant part as follows:

> (c) Of the additional .85 percent income tax levied by Ordinance 200-1994, passed August 22, 1994, .38 percent shall be used to supplement both the General Fund, for such basic expenses as safety services and general maintenance, and the Permanent Improvement Fund, for expenses such as sewers, streets and curbs, as determined by ordinance, and .47 percent shall be used for school district current expenses.

**{¶9}** By 2005, however, the provisions of the enabling legislation R.C. 718.09 were amended to provide that an ordinance enacted pursuant to this revised code provision may not levy the shared income tax on individuals who were not residents of the municipality. *See* 2005 Ohio H.B. No. 66, effective June 30, 2005. However, these changes do not specify that they were made retroactively.

**{¶10}** On November 28, 2012, plaintiff-appellant, Albert Datillo, filed a class action complaint against the city of Euclid, and the city of Euclid Tax Administrator. Datillo alleged that he works in Euclid and has paid the 2.85 percent income tax that benefits the city and the Euclid School District, but he is not a resident of Euclid and receives no benefit from the .47 percent of his tax payments that are used for school district expenses. Datillo asserted that the shared income tax, as established under the 1994 ordinance, violates due process, is illegal, and unjustly enriches the city. He prayed for injunctive relief and a refund for himself and all members of the putative class.

**{¶11}** On February 8, 2013, the defendants filed a motion to dismiss pursuant to Civ.R. 12(B)(6), asserting that Datillo failed to state a claim for relief. Defendants argued that the tax was lawfully enacted under the former version of R.C. 718.09 and is

within the city's general power to tax residents and nonresidents who earn income in the city. They additionally argued that a taxpayer may not, as a matter of law, dissect a general tax and then challenge a particular component of the tax for failing to provide a benefit to him or her individually, and that, in any event, the shared income tax provides a benefit to all who work or live in Euclid.

{¶12} On April 12, 2013, the trial court granted the defendants' motion to dismiss. In a written opinion, the court observed that:

> The U.S. Supreme Court has ruled that "a general tax cannot be dissected to show that, as to certain constituent parts, the taxpayer receives no benefit." *Union Refrigerator Transit Co. v. Kentucky,* 199 U.S. 194, 203 [26 S.Ct. 36, 50 L.Ed. 150] (1905). The City has the power to impose taxes on both residents and non-residents, and has the discretion to allocate those monies collected as it wishes * * *. [T]he City's .47 percent allocation to the City's school district is constitutional and * * * the Plaintiff's dissection of the City's tax allocation in order to determine whether the Plaintiff receives a benefit fails as a matter of law.

{¶13} Datillo now appeals and assigns the following interrelated errors for our review:

> The trial court erred in dismissing Datillo's complaint holding that the special [shared] tax that the City of Euclid imposed on nonresident taxpayers for the Euclid School District comports with due process.
>
> The trial court erred in dismissing Datillo's claim for unjust enrichment.

{¶14} An appellate court reviews a ruling on a motion to dismiss pursuant to Civ.R. 12(B)(6) under a de novo standard of review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5

{¶15} A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 1992-Ohio-73, 605 N.E.2d 378. In order to prevail on a motion to dismiss pursuant to Civ.R. 12(B)(6), it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Byrd v. Faber*, 57 Ohio St.3d 56, 60, 565 N.E.2d 584 (1991); *Grey v. Walgreen Co.*, 197 Ohio App.3d 418, 2011-Ohio-6167, 967 N.E.2d 1249, ¶ 3 (8th Dist.).

{¶16} With regard to the contention that the Euclid ordinance violates due process, we note that in *Angell v. Toledo*, 153 Ohio St. 179, 181, 91 N.E.2d 250 (1950), the Ohio Supreme Court rejected the contention that the city violated the due process rights of a nonresident by taxing income earned in that city. The court stated that

> the test of whether a tax law violates the due process clause is whether it bears some fiscal relation to the protections, opportunities, and benefits given by the state, or, in other words, whether the state has given anything for which it can ask a return.

> The municipality certainly does afford protection against fire, theft, et cetera, to the place of business of plaintiff's employer and the operation thereof without which plaintiff's employer could not as readily run its business and employ help. In other words, the city of Toledo does afford to plaintiff not only a place to work but a place to work protected by the municipal government of Toledo.

> We are of the opinion that Section 6 of Ordinance No. 18-46 of the city of

> Toledo is a valid enactment.

*Id*. at 185.

{¶17} Former R.C. 718.09 authorized the establishment of the "shared income tax" that was "structured as a municipal income tax." 1996 Ohio Atty.Gen.Ops. No. 96-012. Thus, although one of the purposes of the shared income tax is to provide financial assistance to the school district through payment to the district of not less than 25 percent of the revenue generated by the tax, the shared income tax is, in essence, simply a municipal income tax. Euclid Ordinances 791.36.[1] As such, the city may, without violating due process protections afforded a nonresident, tax income earned in that city where the tax "bears some fiscal relation to the protections, opportunities, and benefits given." *Angell*.

{¶18} Here, the city of Euclid amended the city's tax code on August 22, 1994, to increase its municipal income tax from 2 percent to 2.85 percent, to both supplement the city's general fund and to pay current school expenses. Euclid Ordinances 791.36. The legislation bears some fiscal relation to the protections, opportunities, and benefits given by the city of Euclid and comports with due process, in connection with the "protection against fire, theft, * * * to the place of business of plaintiff's employer and the operation thereof without which plaintiff's employer could not as readily run its business and employ help." *Angell*.

---

[1]In this regard, the shared income tax is unlike the income tax that a school district could levy acting solely on its own, because that type of income tax may only be levied upon residents of the school district. R.C. 5748.09.

{¶19} Although R.C. 718.09 was later amended in 2005 to provide that a municipality enacting legislation for a shared municipal school district tax may not levy a tax on nonresidents,[2] this amendment was not made retroactive.

{¶20} In accordance with the foregoing, Datillo's claim that Euclid Ordinances 791.36 violates due process fails to state a claim for relief.

{¶21} As to Datillo's claim that the city has been unjustly enriched, we note that a claim of unjust enrichment asserts liability in quasi-contract and arises out of the obligation cast by law upon a person in receipt of benefits that he is not justly entitled to retain. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183-184, 465 N.E.2d 1298 (1984). The elements are that: (1) a benefit was conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Id.*

{¶22} Euclid Ordinances 791.36 was properly enacted pursuant to the version of R.C. 718.09 in effect in 1994, and it benefits Datillo's employer. *See Angell.* Moreover, a taxpayer is not permitted to dissect the tax to show that, as to certain constituent parts, he receives no benefit. *Union Refrig. Transit Co. v. Kentucky*, 199 U.S. 194, 6 S.Ct. 36, 50 L.Ed. 150. Therefore, Datillo cannot establish that defendants retained a benefit from him under circumstances where it would be unjust to do so without payment.

---

[2] *See* 2005 Ohio H.B. No. 66, effective June 30, 2005.

**{¶23}** In accordance with the foregoing, Datillo's claim for unjust enrichment fails to state a claim for relief.

**{¶24}** The trial court properly concluded that it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," and it properly dismissed the complaint pursuant to Civ.R. 12(B)(6).

**{¶25}** Affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY EILEEN KILBANE, JUDGE

TIM McCORMACK, J., CONCURS;
EILEEN A. GALLAGHER, P.J., CONCURS (SEE SEPARATE CONCURRING OPINION)

EILEEN A. GALLAGHER, P.J., CONCURRING:

**{¶26}** I concur with the majority but write to express my concerns regarding the initiation of this case.

{¶27} The Cuyahoga County Court of Common Pleas case designation sheet in this case, completed by plaintiff's counsel, identifies this case as a "commercial docket" case.

{¶28} This matter, however, is not a case appropriate for a commercial docket pursuant to the parameters set out by the Ohio Supreme Court.

{¶29} The commercial dockets were established to focus on litigation between business entities or a business entity and an owner, sole proprietor, shareholder, partner or member of a business entity.

{¶30} In fact, the rules state that "[a] civil case shall not be eligible for assignment into the commercial docket * * * if a governmental entity is other than a nominal party in the case * * *."

{¶31} In order to maintain the integrity of commercial dockets as envisioned, I suggest that plaintiffs, as well as commercial docket judges, be cautious in their identification of commercial docket cases and the maintenance of a case that is inappropriate on a commercial docket.