BILLINGS TRANSFER CORPORATION, INC. v. COUNTY OF DAVIDSON

No. 28

(Filed 10 December 1969)

1. Taxation § 24— ad valorem tax — situs of corporate property — principal office

The tax situs of a corporation's tangible personal property is at the place of the corporation's principal office in this State, G.S. 105-281, G.S. 105-302(a), unless such property or a part thereof has a tax situs elsewhere and is thus not within the taxing jurisdiction of the State.

2. Taxation §§ 9, 25— ad valorem tax — levy on corporation engaged in interstate commerce

The ad valorem property tax may be levied upon personal property of an individual or corporation engaged in interstate commerce the same as upon any other property as long as the effect of such taxation does not place interstate commerce at a competitive disadvantage with intrastate commerce.

3. Constitutional Law § 23— due process — tax laws

The test of whether a tax law violates due process is whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state.

4. Taxation § 24— ad valorem tax — situs of property — common carrier engaged in interstate commerce — sufficiency of findings

In an action by a common carrier of freight, who maintains its principal office in a county in this State, seeking (1) a judgment to require the county to assess the carrier's ad valorem tax by an apportionment method based on the ratio of miles traveled by the carrier's vehicles in this State to the total miles traveled and (2) a refund of a portion of ad valorem taxes paid to the county under protest in 1963 and 1964, plaintiff's evidence *is held* insufficient to support findings that any of its vehicles engaged in interstate commerce acquired a nondomiciliary tax situs in 1963 and 1964 and that inclusion of those vehicles by the county in its tax assessment cast an undue burden on interstate commerce, the plaintiff having failed to show either that its vehicles were operated along

fixed routes and on regular schedules into, through, and out of the non-domiciliary states or that its vehicles were habitually situated and employed in other states throughout the year; consequently, all of the carrier's property was subject to ad valorem taxation in the county. G.S. 105-281, G.S. 105-302(a).

MOORE, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Ragsdale, J.,* at the April 21, 1969, Civil "A" Session DAVIDSON Superior Court.

Civil action to recover portions of ad valorem county taxes paid under protest to Davidson County for the years 1963 and 1964.

Plaintiff's evidence tends to show the following facts:

1.  Plaintiff is a North Carolina corporation with its principal office in Lexington, the county seat of Davidson County, North Carolina. Defendant is a duly organized and existing county of the State of North Carolina and is the domicile of the plaintiff and of the vehicles owned by the plaintiff which are involved in this action.

2.  During the period 1962-64 plaintiff was primarily engaged in interstate commerce as a common carrier of freight by motor vehicle with routes through North Carolina, Virginia, Maryland, Pennsylvania, Delaware, New Jersey, New York, and South Carolina. Plaintiff generally hauled furniture, textiles, and plywood from the Davidson County area to New York, New Jersey, and Pennsylvania; and on return trips brought other types of freight to North Carolina and South Carolina.

3.  During 1962-64 plaintiff's destination points were New York City and twenty miles thereof; the entire state of New Jersey; the eastern one third of Pennsylvania; Wilmington, Delaware; Baltimore, Maryland; and Washington, D. C. To reach these points plaintiff's vehicles followed one of two prescribed routes insofar as possible, deviating as necessary to make special pickups and deliveries, and stopping for fuel and rest when necessary at specified truck stops where plaintiff had prearranged discounts. Except for emergency road repairs, the maintenance work on plaintiff's tractors and trailers was performed at plaintiff's terminal in Lexington where mechanics were employed and parts were stocked.

4.  The northbound trips originated in Lexington while the southbound trips originated in New York, Pennsylvania, or New Jersey and terminated in Lexington. With rare exceptions, every truck returned to Davidson County at least once a week. During 1963-64 the daily average of trucks traveling along the routes from

Lexington, North Carolina, to points in New York and Pennsylvania was seven per day including Sundays — varying, however, with the season and the availability of freight. Plaintiff corporation had three salaried employees serving it in New York and one in Philadelphia where it maintained terminals.

5. During 1963 and 1964 plaintiff paid no state income taxes to any jurisdiction other than North Carolina. Except for those paid to the defendant, plaintiff paid no ad valorem taxes during either of said years to any state, county, or municipality, or to any sanitary, school, fire, or drainage district. During these years plaintiff owned approximately thirty-two tractors (all licensed in North Carolina) ranging in value from $500 to $9745 and approximately forty-five trailers ranging in value from $851 to $4160.

6. A state-by-state breakdown of miles traveled by plaintiff's vehicles during 1962, 1963 and 1964 is shown in the following table:

|  | 1962 | | 1963 | | 1964 | |
|---|---|---|---|---|---|---|
|  | Total Miles | Percent of Total | Total Miles | Percent of Total | Total Miles | Percent of Total |
| NORTH CAROLINA | 727,910 | 35.56% | 768,192 | 35.88% | 681,822 | 28.90% |
| VIRGINIA | 488,458 | 23.86 | 499,244 | 23.32 | 744,023 | 31.53 |
| MARYLAND | 371,464 | 18.15 | 379,910 | 17.74 | 391,456 | 16.59 |
| DELAWARE | 47,735 | 2.33 | 48,460 | 2.26 | 53,231 | 2.26 |
| PENNSYLVANIA | 82,649 | 4.04 | 84,490 | 3.95 | 91,760 | 3.89 |
| NEW JERSEY | 300,101 | 14.66 | 325,725 | 15.21 | 359,616 | 15.24 |
| NEW YORK | 27,893 | 1.36 | 34,536 | 1.61 | 36,311 | 1.54 |
| SOUTH CAROLINA | 845 | .04 | 651 | .03 | 1,225 | .05 |
| GRAND TOTAL (ALL STATES) | 2,047,055 | 100% | 2,141,208 | 100% | 2,359,444 | 100% |

7. The mileage figures shown in the foregoing table include bobtail miles (tractor without trailer) and include miles traveled by tractors which plaintiff had *leased from* third parties. However, the mileage figures do not include miles traveled by tractors which plaintiff had *leased to* third parties. The figures represent tractor miles, not trailer miles. Moreover, the figures do not show, and

plaintiff offered no evidence to show, the total miles traveled by any single tractor, or tractor-trailer unit, and the proportionate part thereof in North Carolina.

8. Contending that Davidson County must use an apportionment method of assessing ad valorem taxes against it, plaintiff computed and attempted to list its 1963 taxes (based on 1962 mileage table) as follows:

| | | |
|---|---|---|
| Total Market Value of Interstate Motor Vehicles | $316,768 | |
| Ratio of North Carolina Miles to Total Miles Traveled — .3556 | | |
| Market Value Taxable in North Carolina (35.56% of $316,768) | $112,643 | |
| 1963 Taxable Value (60% of $112,643) | | $67,586 |
| Taxable Value of Other Motor Vehicles (not used in interstate commerce) | | 7,420 |
| Taxable Value of Other Personal Property | | 10,110 |
| Taxable Value of Real Estate | | 7,540 |
| Total Taxable Value for 1963 | | $92,656 |
| Taxes due Davidson County ($92,656 at $1.68 per $100) | | $1,566.62 |

Plaintiff computed its 1964 taxes in the same fashion (based on 1963 mileage table and using the mileage ratio of 35.88% for that year) and arrived at a 1964 taxable value of interstate motor vehicles of $66,931 with taxes due Davidson County in the sum of $1,616.85.

9. Contending that the law required plaintiff to list all its tangible personal property in Davidson County where plaintiff's principal office in this State is located, defendant assessed plaintiff's 1963 taxes as follows:

| | | |
|---|---|---|
| Market Value of Interstate Motor Vehicles | $383,000 | |
| Taxable Value of Interstate Motor Vehicles (60% of $383,000) | | $229,800 |

| | | |
|---|---|---|
| Taxable Value of Other Motor Vehicles | 7,420 | |
| Taxable Value of Other Personal Property | 10,110 | |
| Taxable Value of Real Estate | 7,540 | |
| Total Taxable Value for 1963 | $254,870 | |
| Taxes Due Davidson County ($254,870 at $1.68 per $100) | | $4,281.81 |

Davidson County computed plaintiff's 1964 taxes in the same fashion and arrived at a total taxable value for 1964 of $245,550 with taxes due Davidson County in the sum of $4,125.23.

10. Plaintiff paid under protest its 1963 and 1964 taxes as calculated and assessed by the County and claimed a refund of $2,725.19 on the 1963 tax and a refund of $2,508.38 on its 1964 tax.

11. The request for refunds was denied, and plaintiff instituted this suit seeking relief as follows: (1) Cancellation of the assessments against plaintiff's interstate vehicles as computed by defendant for 1963 and 1964 and reassessment of said property by an apportionment method based on the ratio of miles traveled in North Carolina to total miles traveled by plaintiff's vehicles; (2) judgment for $2,725.19 as a refund for excessive 1963 taxes paid and for the sum of $2,508.38 as a refund for 1964 excessive taxes paid; (3) judgment requiring defendant to use the apportionment method of taxing plaintiff's interstate vehicles in the future.

Defendant's motion for judgment of nonsuit at the close of plaintiff's evidence was allowed, and plaintiff appealed. Before determination by the Court of Appeals, we allowed plaintiff's motion to bypass that court, and the case is now before us for review in the first instance.

*Frank P. Holton, Jr., Attorney for plaintiff appellant.*

*DeLapp, Ward and Hedrick by I. A. DeLapp and Charles W. Mauze, Attorneys for defendant appellee.*

*Burney and Burney and George H. Sperry, Attorneys for North Carolina Motor Carriers Association, Inc., Amicus Curiæ.*

*John T. Morrisey, Sr., General Counsel, North Carolina Association of County Commissioners, Amicus Curiæ.*

HUSKINS, J.

The assessment, listing and collection of ad valorem taxes on tangible personal property in North Carolina is regulated by G.S. 105-281 and Article 18 of the Machinery Act, G.S. 105-302 *et seq.*

**[1]**    G.S. 105-281 provides that all property, real and personal, *within the jurisdiction of the State,* not especially exempted, shall be subject to taxation. G.S. 105-302(a) provides that all tangible personal property shall be listed in the township in which its owner has his residence, and "[t]he residence of a corporation . . . domestic or foreign, shall be the place of its principal office in this State. . . ." Thus, with certain exceptions enumerated in G.S. 105-302(b) and (d) which have no pertinence here, the Legislature has fixed the tax situs of a corporation's tangible personal property subject to North Carolina's taxing jurisdiction at the place of its principal office in North Carolina. *In Re Freight Carriers,* 263 N.C. 345, 139 S.E. 2d 633. Since plaintiff's principal office is in Davidson County, plaintiff must list all its tangible personal property for ad valorem taxes in that county unless such property or a part thereof has a tax situs elsewhere and thus is not within the taxing jurisdiction of this State. Plaintiff contends that a portion of its rolling stock is taxable in other states and inclusion of that portion in its tax assessment by Davidson County casts an undue burden on interstate commerce, denies plaintiff the equal protection of the laws, and deprives plaintiff of its property without due process of law. We now examine the validity of these contentions.

**[2]**    The usual ad valorem property tax is an annual levy on a predetermined percentage of the market value of the property. Such tax may be levied by the proper taxing authority upon personal property of an individual or corporation engaged in interstate commerce the same as upon any other property so long as the effect of such taxation does not place interstate commerce at a competitive disadvantage with intrastate commerce. *McGoldrick v. Berwind-White Co.,* 309 U.S. 33, 84 L. ed 565, 60 S. Ct. 388. Interstate commerce can be required to pay its nondiscriminatory share of taxes which each state may impose on property within its borders. *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 82 L. ed 823, 58 S. Ct. 546, 115 A.L.R. 944; *Michigan-Wisconsin Pipeline Co. v. Calvert,* 347 U.S. 157, 98 L. ed 583, 74 S. Ct. 396.

**[3]**    The test of whether a tax law violates due process is "whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for

which it can ask return." *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 85 L. ed 267, 61 S. Ct. 246, 130 A.L.R. 1229 (1940). "[N]o state may tax anything not within her jurisdiction without violating the Fourteenth Amendment." *Farmers Loan Co. v. Minnesota*, 280 U.S. 204, 74 L. ed 371, 50 S. Ct. 98, 65 A.L.R. 1000 (1930).

[4] Plaintiff's evidence is sufficient to survive the motion for nonsuit, if, taken in its light most favorable to plaintiff, it shows that a defined portion of plaintiff's rolling stock had acquired a nondomiciliary tax situs for ad valorem tax purposes. In that event, Davidson County, North Carolina, may tax only that portion which has not acquired a tax situs elsewhere. Hence, the controlling question is whether any portion of plaintiff's tangible personal property had acquired a nondomiciliary tax situs for 1963 and 1964.

We first examine federal decisions dealing with state taxation of property used in interstate commerce.

Early federal decisions permitted the domiciliary state of the owner to tax the entire value of his personal property regardless of its actual presence in the taxing state. *Hays v. Pacific Mail S. S. Co.*, 58 U.S. (17 How.) 596, 15 L. ed 254 (1855); *Cream of Wheat Co. v. Grand Forks County*, 253 U.S. 325, 64 L. ed 931, 40 S. Ct. 558 (1920). Thus, a steamship operating between Alabama and Louisiana was taxable only by New York which was the domiciliary state of its owner. *Morgan v. Parham*, 83 U.S. (16 Wall.) 471, 21 L. ed 303 (1873). Such ships could not be taxed in other states at whose ports they temporarily called to deliver or receive passengers or freight. The ships were not in any proper sense "abiding within the limits" of the nondomiciliary state and had no continuous presence or actual situs there. Therefore, it was held that they could be taxed only at their regular situs — their home port, the domicile of their owners. *Hays v. Pacific Mail S. S. Co., supra; St. Louis v. Ferry Co.*, 78 U.S. (11 Wall.) 423, 20 L. ed 192 (1870); *Wiggins Ferry Co. v. East St. Louis*, 107 U.S. 365, 27 L. ed 419, 2 S. Ct. 257 (1882); *Gloucester Ferry Co. v. Pennsylvania*, 114 U.S. 196, 29 L. ed 158, 5 S. Ct. 826 (1885).

In *Old Dominion S. S. Co. v. Virginia*, 198 U.S. 299, 49 L. ed 1059, 25 S. Ct. 686 (1905), the plaintiff was a Delaware corporation engaged in the transportation of passengers and freight between New York, Norfolk, and other ports in Virginia. Several of its vessels, though engaged in interstate commerce, were employed wholly within the limits of Virginia. These vessels received freight and passengers destined for New York and other points outside Virginia, and transported same from shallow water loading areas to deep water at

Norfolk and Old Point Comfort where the passengers and freight were transferred to the larger oceangoing vessels. The court held that since the vessels in question never left the territorial waters of Virginia, they had acquired an "actual situs" in that state and were subject to the ad. valorem tax which Virginia had levied upon them. The artificial situs created by home port or registry of a vessel determined jurisdiction to tax only in the absence of an actual situs; and actual situs was made to turn on the *uninterrupted presence* of the property within the taxing jurisdiction.

In *Pullman's Palace Car Co. v. Pennsylvania,* 141 U.S. 18, 35 L. ed 613, 11 S. Ct. 876 (1891), plaintiff, an Illinois corporation, was engaged in running railroad cars into, through, and out of Pennsylvania, having at all times a large number of such cars within the State of Pennsylvania. Plaintiff was taxed in Pennsylvania by taking as the basis of assessment such proportion of its capital stock as the number of miles of railroad over which plaintiff's cars were run within Pennsylvania bore to the whole number of miles over which its cars were run in all states. The Supreme Court of Pennsylvania sustained the tax, and plaintiff appealed to the Supreme Court of the United States. That Court upheld the tax and distinguished the earlier vessel cases on the ground that, in those cases, "no continuous presence or actual situs" had been acquired in the taxing jurisdiction; whereas, here, the railroad cars "were continuously and permanently employed in going to and fro upon certain routes of travel."

In *American Refrigerator Transit Co. v. Hall,* 174 U.S. 70, 43 L. ed 899, 19 S. Ct. 599 (1899), plaintiff, an Illinois corporation, was in the business of furnishing refrigerator cars for the transportation of perishable products over the various railroads in the United States. The cars were run indiscriminately over the lines of any railroad over which shippers or the railroad desired to route them. Plaintiff had no office or place of business within the State of Colorado, and its cars were never run in said state in fixed numbers or at regular times. On the average, however, forty cars per year were used within that state. It was held that Colorado could impose upon plaintiff's movable personal property the same tax imposed upon similar property used in like manner by its own citizens and that such tax "may be fixed by an appraisement and valuation of the average amount of the property *thus habitually used and employed.*" (Emphasis ours.)

In *Union Refrigerator Transit Co. v. Kentucky,* 199 U.S. 194, 50 L. ed 150, 26 S. Ct. 36 (1905), plaintiff owned 2,000 railroad cars

which it rented to shippers who used them for the carriage of freight in the United States, Canada, and Mexico over the various railroads. Plaintiff, a Kentucky corporation, contended that the correct method of ascertaining the number of cars which should be assessed for taxation in Kentucky was to ascertain and list such a proportion of its cars as were shown to be used in the State of Kentucky during the fiscal year. Using a system of averages, the trial court found that sixty-seven cars for the year 1900 were subject to assessment in Kentucky and that the cars other than those mentioned were not liable to assessment. The Court of Appeals of Kentucky reversed and held the company was liable for taxation upon its entire 2,000 cars. Upon appeal to the United States Supreme Court it was held on due process grounds that plaintiff's tangible personal property *permanently located in other states and employed there* in the prosecution of plaintiff's business was not subject to taxation in Kentucky. Hence, Kentucky's attempt to impose a tax upon plaintiff's *entire fleet* of rolling stock was invalidated.

In *New York Central R. R. Co. v. Miller,* 202 U.S. 584, 50 L. ed 1155, 26 S. Ct. 714 (1906), decided only one year after the *Union Refrigerator* case, plaintiff was a New York corporation with interstate as well as intrastate lines and sent its cars to points without and within the state and over other lines as well as its own. The cars were often out of plaintiff's possession and transferred to many roads successively, and even used by other roads for their own independent business, before they were returned to the plaintiff-owner or to the domiciliary state of New York. "In short, by the familiar course of railroad business a considerable portion of the [plaintiff's] cars constantly is out of the state," and on this ground plaintiff contended that the portion of its cars constantly absent could not be taxed in New York. New York taxed all plaintiff's rolling stock and refused to make any reduction of the tax. Successive appeals carried the case to the Supreme Court of the United States. There, Mr. Justice Holmes, for the court, said: "It is true that it has been decided that property, even of a domestic corporation, cannot be taxed if it is permanently out of the State. [Citations omitted.] But it has not been decided, and it could not be decided, that a State may not tax its own corporations for all their property within the State during the tax year, even if every item of that property should be taken successively into another State for a day, a week, or six months, and then brought back. Using the language of domicil, . . . the state of origin remains the permanent situs of the property, notwithstanding its occasional excursions to foreign parts."

In *Johnson Oil Co. v. Oklahoma,* 290 U.S. 158, 78 L. ed 238, 54

S. Ct. 152 (1933), plaintiff, an Illinois corporation, owned a fleet of tank cars used mainly to transport oil from its refineries in Pawnee County, Oklahoma, for delivery in other states. Upon making such deliveries the cars usually returned to the Oklahoma refinery where plaintiff maintained trackage for a small part of the cars and facilities for minor repairs upon them. The cars were almost continuously in movement and on average out of Oklahoma from twenty to twenty-nine days each month. Under a state statute, Pawnee County levied ad valorem property taxes upon the entire fleet of cars. Plaintiff challenged the levy under the Due Process Clause of the Fourteenth Amendment upon the ground that the cars did not have a tax situs within the state and that Oklahoma had no jurisdiction to tax them. The Supreme Court of Oklahoma sustained the tax on the entire fleet and plaintiff appealed to the United States Supreme Court. Held: (1) Plaintiff had its domicile in Illinois, and that state had jurisdiction to tax appellant's personal property *which had not acquired an actual situs elsewhere;* (2) conversely, the domiciliary state had no jurisdiction to tax personal property when its actual situs was in another state; (3) although the cars were employed in interstate commerce, that fact did not make them immune from a non-discriminatory property tax in a state which could be deemed to have jurisdiction; and (4) even though the cars had acquired a situs outside Illinois — the domicile of their owner — for the purpose of state taxation the mere fact that they were loaded and reloaded in Oklahoma did not fix the situs of the entire fleet in that state; rather, Oklahoma's jurisdiction to tax such property must be determined on a basis consistent with like jurisdiction of other states in which the property was *habitually employed,* and this could be accomplished by taking the number of cars which on the average were found to be physically present in Oklahoma.

In *Northwest Airlines v. Minnesota,* 322 U.S. 292, 88 L. ed 1283, 64 S. Ct. 950, 153 A.L.R. 245 (1944), plaintiff, a Minnesota corporation with its principal place of business in St. Paul, was a commercial airline carrying persons, property, and mail on regular fixed routes primarily in Illinois, Minnesota, North Dakota, Montana, Oregon, Wisconsin, and Washington. For all the planes St. Paul was the home port registered with the Civil Aeronautics Authority under whose certificate of convenience and necessity Northwest operated. Maintenance bases were operated by Northwest at six of its scheduled cities, but the work of rebuilding and overhauling its planes was done in St. Paul. All of the planes were in Minnesota from time to time during every year. However, all planes were continuously en-

gaged in flying from state to state except when laid up for repairs and overhauling.

On May 1, 1939, the time fixed by Minnesota statutes for assessing personal property subject to its tax, Northwest's scheduled route mileage in Minnesota was fourteen percent of its total scheduled route mileage and the scheduled plane mileage in Minnesota was sixteen percent of the total scheduled. Northwest based its personal property tax for 1939 on the number of its planes in Minnesota on May 1, 1939. The appropriate taxing authority of Minnesota assessed a tax on Northwest on the basis of its entire fleet of planes coming into Minnesota. Plaintiff brought this action to recover taxes paid on that additional assessment. The Supreme Court of Minnesota affirmed the judgment of the lower court sustaining the assessment, and the United States Supreme Court granted certiorari to review that judgment. Held: "Minnesota is here taxing a corporation for all its property within the State during the tax year no part of which receives permanent protection from any other State. . . . It was not shown in the *Miller* case and it is not shown here that a defined part of the domiciliary corpus has acquired a permanent location, *i.e.*, a taxing situs, elsewhere. That was the decisive feature of the *Miller* case, and it was deemed decisive as late as 1933 in *Johnson Oil Co. v. Oklahoma*, 290 U.S. 158 [78 L. ed 238, 54 S. Ct. 152], which was strongly pressed upon us by Northwest. . . . The doctrine of tax apportionment . . . is here inapplicable. . . . The continuous protection by a State other than the domiciliary State — that is, protection throughout the tax year — has furnished the constitutional basis for tax apportionment in these interstate commerce situations, and it is on that basis that the tax laws have been framed and administered." Mr. Justice Frankfurter further asserts that no judicial restriction has ever been applied against the domiciliary state except when property is *permanently situated elsewhere*, "[a]nd permanently means continuously throughout the year, not a fraction thereof, whether days or weeks." *Ibid*. 322 U.S. 292, 298.

In *Ott v. Mississippi Barge Line*, 336 U.S. 169, 93 L. ed 585, 69 S. Ct. 432 (1949), the court reexamined the power of a nondomiciliary state to tax vessels engaged in interstate commerce. Defendant was a foreign corporation which transported freight in interstate commerce up and down the Mississippi and Ohio Rivers under certificates of public convenience and necessity issued by the Interstate Commerce Commission. Defendant had an office or agent in Louisiana, but its principal place of business was elsewhere. The barges and towboats involved were registered at ports outside Lou-

isiana. In trips to Louisiana the tugs brought a line of barges to New Orleans and left them for unloading and reloading. The tugs then picked up loaded barges for return trips to ports outside that state. There was no fixed schedule for movement of the barges but the trips were accomplished as quickly as possible.

Louisiana and the City of New Orleans, using an assessment formula authorized by state statute, levied ad valorem taxes under assessments based on the ratio between the total miles of defendant's lines in Louisiana and the total number of miles of the entire line. The taxes were paid under protest and this suit instituted for their recovery on the ground that the taxes violated the Due Process and Commerce Clauses of the United States Constitution. Successive appeals carried the case to the United States Supreme Court. Held: An assessment based on the ratio between the total number of miles of the carrier's lines in Louisiana and the total number of miles of the entire line does not violate the Commerce or Due Process Clauses of the Federal Constitution. Allegations of defendant that its vessels visited Louisiana sporadically and for fractions of the year only and that there was no average number of vessels in the state every day were said to be immaterial because the Louisiana statute only intended to cover and actually covered an average portion of property *permanently within the state throughout the taxing year.*

In *Standard Oil Co. v. Peck*, 342 U.S. 382, 96 L. ed 427, 72 S. Ct. 309, 26 A.L.R. 2d 1371 (1952), plaintiff was an Ohio corporation owning boats and barges which it used to transport oil along the Mississippi and Ohio Rivers. The vessels neither picked up nor discharged oil in Ohio. The main terminals were in Tennessee, Indiana, Kentucky, and Louisiana. The maximum river mileage traversed by the boats and barges through waters bordering Ohio was seventeen and one half miles. The vessels were registered in Cincinnati but only stopped in Ohio for occasional fuel or repairs. Ohio, the domiciliary state, levied an ad valorem tax on all of these vessels. The Supreme Court of Ohio sustained the levy, and the Supreme Court of the United States reversed. The court distinguished *Miller* and *Northwest Airlines* on the ground that in those cases it was not shown that "a defined part of the domiciliary corpus" had acquired a taxable situs elsewhere, and held that *Ott* controlled "since most, if not all, of the barges and boats which Ohio has taxed were almost continuously outside Ohio during the taxable year." The doctrine of apportionment applied in *Ott* was held applicable, and the court for the first time held that "[t]he rule which permits taxation by two or more states on an apportionment basis precludes taxation

of all of the property by the state of the domicile." Without saying so, the court obviously held that the boats and barges had acquired a taxable situs in one or more nondomiciliary states.

In *Braniff Airways v. Nebraska Board,* 347 U.S. 590, 98 L. ed 967, 74 S. Ct. 757 (1954), plaintiff, an Oklahoma corporation with its principal place of business in Oklahoma City, operated a fleet of aircraft flying regular schedules over regular routes with stops in fourteen states including Nebraska and Oklahoma. Its aircraft made eighteen stops per day regularly in Nebraska, and one tenth of its revenue was derived from the pickup and discharge of Nebraska freight and passengers. Pursuant to a Nebraska tax statute, an apportioned ad valorem tax was levied on plaintiff's flight equipment, and the levy based on a formula prescribed in the statute for arriving at the proportion of a carrier's flight equipment to be allocated to the state. Plaintiff contended its flight equipment had no tax situs in Nebraska and that the levy imposed a burden on interstate commerce and violated due process under the Fourteenth Amendment. Held: There is no logical basis for distinguishing the constitutional power to impose a tax on such aircraft from the power to impose taxes on river boats. The tax was sustained on authority of *Ott v. Mississippi Barge Line, supra* (336 U.S. 169, 93 L. ed 585, 69 S. Ct. 432); *Standard Oil Co. v. Peck, supra;* and *Curry v. McCanless,* 307 U.S. 357, 83 L. ed 1339, 59 S. Ct. 900, 123 A.L.R. 162 (1939). *Northwest Airlines v. Minnesota, supra* (322 U.S. 292, 88 L. ed 1283, 64 S. Ct. 950, 153 A.L.R. 245), was distinguished on the ground that, in that case, it was not shown *that a defined part of the domiciliary corpus had acquired a permanent location, i.e., a taxing situs, elsewhere. Hays v. Pacific Mail S. S. Co., supra* (58 U.S. [17 How.] 596, 15 L. ed 254); *Morgan v. Parham, supra* (83 U.S. [16 Wall.] 471, 21 L. ed 303); and *Southern Pacific Co. v. Kentucky,* 222 U.S. 63, 56 L. ed 96, 32 S. Ct. 13 (1911), were distinguished on the ground that the first two cases were efforts to tax the entire value of the ships, without apportionment, while the last case held the state of corporate domicile had power to tax vessels that were not taxable elsewhere.

In *Central Railroad Co. v. Pennsylvania,* 370 U.S. 607, 8 L. ed 2d 720, 82 S. Ct. 1297 (1962), plaintiff, a Pennsylvania corporation operating a railroad only in that state and having no tracks outside of it, owned freight cars which were used in ordinary transportation operations in three ways: (1) by plaintiff on its own tracks in Pennsylvania; (2) by Central Railroad Company of New Jersey (CNJ) on fixed routes and regular schedules over its tracks in New

Jersey, habitually during the taxable year; and (3) by many other railroads on their own lines in various parts of the country. Pennsylvania levied an annual property tax on the total value of all freight cars owned by plaintiff. Plaintiff challenged its right to do so under the Commerce Clause and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Held: The freight cars that had been run *habitually during the taxable year on fixed routes and regular schedules* over the lines of CNJ in New Jersey acquired a tax situs there and were subject to the imposition of an apportioned ad valorem tax by the State of New Jersey. Consequently, the daily average number of freight cars located on the CNJ lines during the tax year cannot constitutionally be taxed in Pennsylvania. With respect to the remainder of plaintiff's fleet of freight cars, including those used by other railroads in other states, Pennsylvania may constitutionally tax them at full value since plaintiff has failed to sustain its burden of proving that a tax situs had been established elsewhere with respect to such cars.

The foregoing federal decisions lend verity to these words of Mr. Justice Frankfurter: "The history of this problem is spread over hundreds of volumes of our Reports. To attempt to harmonize all that has been said in the past would neither clarify what has gone before nor guide the future." *Freeman v. Hewit,* 329 U.S. 249, 252, 91 L. ed 265, 271, 67 S. Ct. 274, 276 (1946). Even so, the decisions seemingly support the following basic conclusions:

1. Situs is an absolute essential for tax exaction. *New York Central R. R. Co. v. Miller, supra* (202 U.S. 584, 50 L. ed 1155, 26 S. Ct. 714); *Johnson Oil Co. v. Oklahoma, supra* (290 U.S. 158, 78 L. ed 238, 54 S. Ct. 152); *Curry v. McCanless, supra* (307 U.S. 357, 83 L. ed 1339, 59 S. Ct. 900, 123 A.L.R. 162); *Northwest Airlines v. Minnesota, supra* (322 U.S. 292, 88 L. ed 1283, 64 S. Ct. 950, 153 A.L.R. 245).

2. The state of domicile may tax the full value of a taxpayer's tangible personal property for which no tax situs beyond the domicile has been established so that the property may not be said to have "acquired an actual situs elsewhere." *Hays v. Pacific Mail S. S. Co., supra* (58 U.S. [17 How.] 596, 15 L. ed 254); *Morgan v. Parham, supra* (83 U.S. [16 Wall.] 471, 21 L. ed 303); *St. Louis v. Ferry Co., supra* (78 U.S. [11 Wall.] 423, 20 L. ed 192); *Wiggins Ferry Co. v. East St. Louis, supra* (107 U.S. 365, 27 L. ed 419, 2 S. Ct. 257); *Gloucester Ferry Co. v. Pennsylvania, supra* (114 U.S. 196, 29 L. ed 158, 5 S. Ct. 826); *New York Central R. R. Co. v. Miller, supra; Southern Pacific Co. v. Kentucky, supra* (222 U.S.

63, 56 L. ed 96, 32 S. Ct. 13); *Cream of Wheat Co. v. Grand Forks County, supra* (253 U.S. 325, 64 L. ed 931, 40 S. Ct. 558); *Johnson Oil Co. v. Oklahoma, supra; Northwest Airlines v. Minnesota, supra; Central Railroad Co. v. Pennsylvania, supra* (370 U.S. 607, 8 L. ed 2d 720, 82 S. Ct. 1297).

3. The state of domicile may constitutionally subject its own corporations to nondiscriminatory property taxes even though they are engaged in interstate commerce. It is only multiple taxation of interstate operations that violates the Commerce Clause. *Standard Oil Co. v. Peck, supra* (342 U.S. 382, 96 L. ed 427, 72 S. Ct. 309, 26 A.L.R. 2d 1371).

4. The state of domicile may not levy an ad valorem tax on tangible personal property of its citizens which is *permanently* located in some other state *throughout the tax year.* This is forbidden by the Due Process Clause of the Fourteenth Amendment. *Pullman's Palace Car Co. v. Pennsylvania, supra* (141 U.S. 18, 35 L. ed 613, 11 S. Ct. 876); *Old Dominion S. S. Co. v. Virginia, supra* (198 U.S. 299, 49 L. ed 1059, 25 S. Ct. 686); *Union Refrigerator Transit Co. v. Kentucky, supra* (199 U.S. 194, 50 L. ed 150, 26 S. Ct. 36); *Northwest Airlines v. Minnesota, supra; Ott v. Mississippi Barge Line, supra* (336 U.S. 169, 93 L. ed 585, 69 S. Ct. 432).

5. When a fleet of vehicles is operated into, through, and out of a nondomiciliary state, a "tax situs" sufficient to satisfy constitutional requirements is acquired if (a) the vehicles are operated along fixed routes *and* on regular schedules, or (b) the vehicles are habitually situated and employed within the nondomiciliary jurisdiction throughout the tax year. In that event, their continuous presence supports imposition of an ad valorem tax based upon the average number continuously present in the taxing state regardless of routes and schedules. *American Refrigerator Transit Co. v. Hall, supra* (174 U.S. 70, 43 L. ed 899, 19 S. Ct. 599); *Union Refrigerator Transit Co. v. Kentucky, supra; Braniff Airways v. Nebraska Board, supra* (347 U.S. 590, 98 L. ed 967, 74 S. Ct. 757); *Central Railroad Co. v. Pennsylvania, supra.*

6. When an apportionment tax is imposed by a nondomiciliary state (a) it must be just and equitable (*Union Refrigerator Transit Co. v. Kentucky, supra*); (b) it must bear a reasonable relation in its practical operation to the opportunities, the benefits, and the protection afforded by the taxing jurisdiction (*Wisconsin v. J. C. Penney Co., supra* [311 U.S. 435, 85 L. ed 267, 61 S. Ct. 246, 130 A.L.R. 1229], *Ott v. Mississippi Barge Line, supra*); and (c) the

opportunities, benefits and protection must be available throughout the tax year (*Northwest Airlines v. Minnesota, supra*).

7.  When *a defined part of the domiciliary corpus* has acquired a taxable situs in one or more nondomiciliary states, it may be taxed by those states on an apportionment basis; and taxation by apportionment precludes taxation of all of the property by the state of the domicile. *Pullman's Palace Car Co. v. Pennsylvania, supra; American Refrigerator Transit Co. v. Hall, supra; Union Refrigerator Transit Co. v. Kentucky, supra; Standard Oil Co. v. Peck, supra.*

8.  With respect to tangible movable property, a mere *general* showing of its continuous use in other states is insufficient to exclude the taxing power of the state of domicile. *Ott v. Mississippi Barge Line, supra; Standard Oil Co. v. Peck, supra; Central Railroad Co. v. Pennsylvania, supra.*

9.  The burden is on the taxpayer who contends that some portion of his tangible personal property is not within the taxing jurisdiction of his domiciliary state to prove that the same property has acquired a tax situs in another jurisdiction. *Central Railroad Co. v. Pennsylvania, supra; cf. Dixie Ohio Co. v. State Revenue Comm'n,* 306 U.S. 72, 83 L. ed 495, 59 S. Ct. 435 (1939).

[4]  Applying the foregoing principles to the case before us, we find it impossible to determine from plaintiff's evidence that a defined portion of plaintiff's property had acquired a taxable situs for the years 1963 and 1964 in any nondomiciliary state.

It was incumbent upon plaintiff to show that a defined portion of its property was operated along fixed routes *and* on regular schedules into, through, and out of nondomiciliary states or was habitually situated and employed in other states throughout the tax year. *Old Dominion S. S. Co. v. Virginia, supra* (198 U.S. 299, 49 L. ed 1059, 25 S. Ct. 686); *New York Central R. R. Co. v. Miller, supra* (202 U.S. 584, 50 L. ed 1155, 26 S. Ct. 714); *Northwest Airlines v. Minnesota, supra* (322 U.S. 292, 88 L. ed 1283, 64 S. Ct. 950, 153 A.L.R. 245); *Ott v. Mississippi Barge Line, supra; Central Railroad Co. v. Pennsylvania, supra.*

Plaintiff's evidence fails to support either alternative and fails to show that the property was otherwise protected or benefited by any nondomiciliary state. Continuous presence throughout the tax year is not shown by evidence which "merely proves that some determinable fraction of its property is absent from the state for part of the tax year." *Central Railroad Co. v. Pennsylvania, supra.* Op-

eration along fixed routes *and* on regular schedules is not shown by evidence which proves that two *general routes* were followed insofar as possible, the vehicles deviating as necessary for pickups and deliveries. Furthermore, the mileage shown was made by an unknown number of tractors pulling a different but unknown number of trailers. It might have been ten or it might have been thirty tractors that made the total mileage. In any event, "it would be going a very great way to infer from car mileage the average number or proportion of cars absent from the State. . . . Certainly no inference whatever could be drawn that the same cars were absent from the State all the time." *New York Central R. R. Co. v. Miller, supra.* Even the daily average number of trucks on the road varied with the season and the availability of freight. Finally, all plaintiff's vehicles were registered in the domiciliary state. Except for emergency repairs on the road, plaintiff garaged and serviced all its vehicles in Davidson County, North Carolina. Almost without exception, all vehicles returned to North Carolina every week.

When the evidence is considered as a whole, it is apparent that the state of domicile continued at all times to afford all of plaintiff's property the opportunities, benefits, and protection which due process requires as a prerequisite of taxation. No protection, benefits, or opportunities were afforded by nondomiciliary jurisdictions throughout either of the tax years involved. Hence, all of the property was subject to ad valorem taxation in Davidson County. G.S. 105-281; G.S. 105-302(a). If the assessed valuation is excessive, which is not asserted here, appropriate statutes provide a remedy. We note, however, that plaintiff has stipulated to the correctness and accuracy of the market value placed by Davidson County on the vehicles involved for 1963 and 1964.

Plaintiff's fear of *double* taxation is largely imaginary. No other state has attempted to levy an ad valorem tax on any portion of plaintiff's property. Few, if any, of the states involved have statutes. authorizing imposition of an apportionment tax on the rolling stock of nonresidents. In fact, the laws of Delaware provide that no tax may be levied, assessed or collected by the state or any of its political subdivisions on personal property generally. 9 Del. C. § 8102; 30 Del. C. § 102. Thus plaintiff's scheme of taxation would set at large about sixty-five percent of its rolling stock with the likely result that it would escape taxation altogether.

Plaintiff having failed to show that some portion of its property

had acquired a nondomiciliary tax situs, the judgment of nonsuit entered by the lower court is

Affirmed.

MOORE, J., took no part in the consideration or decision of this case.