IN THE MATTER OF THE APPEAL OF PLUSHBOTTOM AND PEABODY, LTD. FROM THE ASSESSMENT OF CERTAIN OF ITS PROPERTY FOR TAXA- TION BY THE MECKLENBURG COUNTY BOARD OF EQUALIZATION AND REVIEW FOR TAX YEARS 1972 THROUGH 1977.

No. 8026SC588

(Filed 7 April 1981)

Taxation § 24.2– ad valorem taxation – situs of inventory outside N.C. for stitching or laundering

    A foreign corporation which was a broker of high fashion jeans acquired a business situs in Mecklenburg County so as to subject its property (piece goods and finished goods) to ad valorem taxation by Mecklenburg County where its only warehouse for assembling and shipping its inventory was located in Mecklenburg County, and the tax situs of such property remained in Mecklenburg County while it was outside North Carolina on the tax date being stitched or laundered. G.S. 105-304(f)(4).

APPEAL by Mecklenburg County from *Ferrell, Judge.* Order signed 31 January 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 27 January 1981.

In 1977 the Mecklenburg County Tax Supervisor discov- ered and "listed" for tax purposes, certain piece goods and finished goods of Plushbottom and Peabody, Ltd. (Plushbottom) which had not been listed for taxes by Plushbottom for the tax years 1972 through 1977. Plushbottom operates on a fiscal year ending June 30, and all of its goods located *in* Mecklenburg County on June 30 of any particular year are listed for the following tax year. Plushbottom never listed for tax purposes any of its goods that were processed in Mecklenburg County if those goods were not physically present in Mecklenburg Coun- ty on the tax date — June 30 of each year. The property which is the subject of the controversy is that property owned by Plush- bottom which was outside of North Carolina for stitching or laundering on the tax date. The portion of Plushbottom's inven- tory which was out-of-state on the tax dates totalled $271,170 for 1972, $140,616.86 for 1973, $190,267 for 1974, $170,827 for 1975, $623,360 for 1976, and $620,324 for 1977.

Plushbottom appealed the "listing" to the Mecklenburg County Board of Equalization and Review, and the Board de- termined that the goods were subject to taxation in Mecklen- burg County. Plushbottom then appealed to the North Carolina Property Tax Commission which sat as the State Board of

Equalization and Review. From an adverse decision by the North Carolina Property Tax Commission, Plushbottom filed its petition for judicial review under G.S. 150A-43, et seq., in the Superior Court of Mecklenburg County. The Superior Court reversed the decision of the North Carolina Property Tax Commission and ruled that the property did not have a tax *situs* in Mecklenburg County. The sole issue on appeal is whether that ruling by the Superior Court is correct.

Plushbottom is a foreign corporation incorporated in 1969 under the laws of the State of New York. Its headquarters is in New York City. Since 1971 Plushbottom has had a facility in Mecklenburg County and has listed and paid taxes on substantial property which was located in Mecklenburg County on the tax date. In 1973, Plushbottom obtained a Certificate of Authority to do business in North Carolina.

Plushbottom is a broker of wearing apparel — high fashion jeans — and not a manufacturer. Plushbottom's only warehouse and only place for assembling and shipping its inventory is in Mecklenburg County. Although all orders, scheduling, and sales are handled from the New York office, the sorting, delivering, tagging and invoicing are handled in the Mecklenburg County plant.

Plushbottom orders piece goods from various customers, and the piece goods are shipped to the Mecklenburg County facility for counting. These goods are then routed to various stitcheries in the Southeast (including places in North Carolina) for sewing. When the sewing is complete, the finished goods are returned to the Mecklenburg County facility. Prior to January 1975, the goods were then tagged, boxed, invoiced and shipped to customers. Since January 1975, Plushbottom has been delivering the finished goods to laundries in the Southeast (including places in North Carolina) for pre-washing. After the pre-washing, the finished goods are returned to the Mecklenburg County facility where they are tagged, boxed, invoiced and shipped to customers inside and outside the State of North Carolina. The cycle takes approximately six weeks from the time the piece goods enter Mecklenburg County until they leave Mecklenburg County as finished goods. The average stay of any particular item in Mecklenburg County is five days.

Plushbottom has 80 full-time employees in Mecklenburg County; its warehouse in Mecklenburg County contains 50,000 square feet. The New York facility contains 15,000 square feet and includes a showroom, a design room, a pattern-making room, a sales department and other executive offices. None of the property which Mecklenburg County has attempted to tax has ever passed through New York.

*Ruff, Bond, Cobb, Wade & McNair, by Hamlin L. Wade, for appellant Mecklenburg County.*

*Bradley, Guthery, Turner & Curry, by Paul B. Guthery and Ray W. Bradley, Jr., for appellee Plushbottom & Peabody, Ltd.*

BECTON, Judge.

Mecklenburg County's sole assignment of error raised two questions: Did the property of Plushbottom ever acquire a tax *situs* in Mecklenburg County? If so, did the property of Plushbottom lose its tax *situs* while it was being stitched or laundered outside of North Carolina? Because no constitutional issue has been raised about the right of North Carolina to tax the property under the Commerce Clause or the Due Process or Equal Protection Clauses of the United States Constitution, we turn to the applicable North Carolina Statute, G.S. 105-271, et seq.

The discovery, "assessment, listing and collection of ad valorem taxes on tangible personal property in North Carolina is regulated by" The Machinery Act, G.S. 105-271, et seq. *Transfer Corp. v. County of Davidson*, 276 N.C. 19, 24, 170 S.E. 2d 873, 877 (1969). G.S. 105-274 provides that all property — real and personal — within the jurisdiction of this state, whether owned by a foreign corporation or a domestic corporation, is subject to taxation unless specifically excluded or exempted from the tax base. G.S. 105-304 provides that tangible personal property subject to taxation shall be taxed at the residence of the owner, and "[t]he residence of a domestic or foreign taxpayer other than an individual person shall be the place at which its principal North Carolina place of business is located." G.S. 105-304(c)(2). Thus, the tax *situs* of a corporation's tangible personal property within the jurisdiction of the state is at the place of its principal office in North Carolina. *Transfer Corp., supra; In re Freight Carriers*, 263 N.C. 345, 139 S.E. 2d 633 (1965).

It is clear that Plushbottom has a business operation in the State of North Carolina. But, does the record contain facts to support a finding that Plushbottom has a "business *situs*" in North Carolina so as to subject its property to taxation by Mecklenburg County? In cases involving "intangibles" and "tangibles" the North Carolina Supreme Court answered "yes" to this question in 1936. In *Mecklenburg County v. Sterchi Bros. Stores*, 210 N.C. 79, 185 S.E. 454 (1936), the North Carolina Supreme Court considered the question of whether a foreign corporation having an office or store in Mecklenburg County was subject to an intangibles tax on its solvent credits arising from retail sales. The Supreme Court held that the credits (conditional sales contracts and accounts receivable) owned by Sterchi Brothers were subject to ad valorem taxation in Mecklenburg County and said:

> As a general rule, the principal *'mobilia personam sequuntur'* governs the *situs* of tangible property for the purpose of taxation. In other words, movables follow the law of the person. There is a well recognized and just exception to this rule where there is a 'business *situs*' of intangibles separate and apart from the domicile of the owner. When the manner of doing business establishes this *situs*, the intangibles are taxable. ...
>
> .   .   .
>
> 'The theory of taxation is, that the right to tax is derived from the protection afforded to the subject upon which it is imposed. ... The actual *situs* and control of the property within this State, and the fact that it enjoys the protection of the laws here, are conditions which subject it to taxation here. ...' (Citation omitted.)
>
> .   .   .
>
> If the defendant was allowed to escape tax in this jurisdiction, under the facts and circumstances of this case, a foreign corporation, by establishing a 'business *situs*,' as in the present case, would have a special privilege over other installment stores of like nature located and doing business in Mecklenburg County, N.C.

210 N.C. at 83, 85, 87, 185 S.E. at 457, 458, 459-60. More importantly, the court in *Sterchi Bros.* adopted the following defini-

tion of business *situs* which is controlling: "'Business *situs* — A *situs* acquired for tax purposes by one who has carried on a business in the state more or less permanent in its nature.'" (Citation omitted.) *Id.* at 83, 185 S.E. at 457. Similarly, in *Texas Co. v. Elizabeth City*, 210 N.C. 454, 187 S.E. 551 (1936), the North Carolina Supreme Court held that motor boats owned by a non-resident corporation but which were used in and about Elizabeth City were subject to taxation in North Carolina. The court stated:

> The *situs* of personal property for purposes of taxation is ordinarily the domicile of the owner. Where, however, the owner maintains said property in a jurisdiction other than that of his domicile, in the conduct of his business within such jurisdiction, the *situs* of said property for purposes of taxation is its actual *situs*, and not that of his domicile.

210 N.C. at 456, 185 S.E. at 522.

There is ample evidence in the record to support a finding that Plushbottom established a business *situs* by the conduct of its business so as to subject its property to taxation within the state. The entire inventory of Plushbottom is channeled through Mecklenburg County, and no portion of this inventory is ever shipped to or ever passes through New York.

The Mecklenburg County facility employs 80 people regularly and includes a building with 50,000 square feet. Seventy-percent of all Plushbottom's piece goods are obtained by Plushbottom from greige mills in North Carolina, and the piece goods are picked up from these mills at locations in North Carolina. Approximately fifty-percent of all laundering is done in North Carolina. Plushbottom officials admit settling in Mecklenburg County because it is a favorable area for trucking and business opportunities. In contrast, Plushbottom's headquarters, which is in New York, employs seventy people and is located in a building with 15,000 square feet.

Plushbottom contends that establishing a "business *situs*" is not enough, and that it is necessary to determine whether Plushbottom's inventory was "situated" or "more or less permanently located" in the state. In support of its contention, Plushbottom cites G.S. 105-304(d)(2), *In re Appeal of Finishing Co.*, 285 N.C. 598, 207 S.E. 2d 729 (1974), and *Transfer Corp.*,

*supra*, and seeks to distinguish *Sterchi Bros, supra*, and *Texas Co., supra*.

Plushbottom reads the definition of "business *situs*" as set forth in *Sterchi Bros.* too broadly. A "situs [is] acquired for tax purposes by one [whose] ... business in the state [is] more or less permanent in its nature." 210 N.C. at 83, 185 S.E. at 457. *Sterchi Bros.* does not require that *inventory* be "more or less permanently located" in this state when a foreign corporation conducts business in this sate on a more or less permanent basis. Moreover, when the Machinery Act is viewed in context, G.S. 105-304(d)(2) actually supports Mecklenburg County. The word "situated" ("more or less permanently located") which is used in G.S. 105-304(d)(2) is not used in G.S. 105-274 which provides that foreign corporations are to be treated the same as domestic corporations. The word "situated" is also not contained in G.S. 105-304(c)(2) which provides that the residence of a foreign corporation shall be the place at which its principal North Carolina place of business is located. It is not necessary to look to the provisions of G.S. 105-304(d)(2) which provides that tangible personal property owned by a foreign taxpayer *which has not principal office in this state* shall be taxable at the place in the state at which the property is situated. (Emphasis added.) Plushbottom has a principal office in Mecklenburg County. Once Plushbottom established a business *situs* in this state, the tax *situs* for all its property became its principal place of business. G.S. 105-304(d)(2) contemplates a situation in which a corporation has no principal office in this state, and its property is in a transient condition through the state.

The *Finishing Co.* case, relied upon by Plushbottom, arose from an attempt by the tax supervisor of Forsyth County to tax a substantial portion of inventory which was located at the Hanes Mill in Forsyth County on the tax date. Hanes did not own the goods; rather, the goods belonged to 106 different customers from inside and outside the state of North Carolina. The goods remained at the Hanes plant for a period of three to six weeks before they were shipped back to the customers. Of the 106 customers, 102 were non-resident corporations. Only after finding that none of the 102 non-resident corporations had business premises in North Carolina, and only after further finding that the "business premises" of Hanes were not the business premises of the non-resident corporations, did the Court con-

strue G.S. 105-304(d)(2) to require that the inventory must be "situated" or "more or less permanently located" in the state in order for such inventory to be taxable in this state. 285 N.C. at 613, 207 S.E. 2d at 739.

Significantly, the *Finishing Co.* court also held that the inventory, owned by non-resident corporations but purchased from North Carolina greige mills and shipped to Hanes for processing and re-shipment to customers at destinations outside of North Carolina, was subject to ad valorum taxation by Forsyth County. *Id.* at 615, 207 S.E. 2d at 739. This holding in *Finishing Co.* with regard to purchases from North Carolina greige mills is instructive. There is evidence in this case that seventy percent of all piece goods owned by Plushbottom were picked up by Plushbottom from greige mills in North Carolina. Moreover, fifty percent of the laundering, all of which has been done since 1975, is done in North Carolina.

In *Transfer Corp.*, the taxpayer, a North Carolina corporation and therefore a domiciliary of North Carolina, was attempting to exempt from taxation in Davidson County a portion of its truck fleet that travelled in other states as a common carrier. Because the taxpayer in that case was unable to show that the trucks were either operated along fixed routes and on regular schedules into, through, and out of the non-domiciliary states or were habitually situated and employed in other states throughout the year, the court held that the entire fleet was taxable in Davidson County.

> When the evidence is considered as a whole, it is apparent that the state of domicile continued at all times to afford all of plaintiff's property the opportunities, benefits, and protection which due process requires as a prerequisite of taxation. No protection, benefits, or opportunities were afforded by nondomiciliary jurisdictions throughout either of the tax years involved. Hence, all of the property was subject to ad valorum taxation in Davidson County.

276 N.C. at 35, 170 S.E. at 885. It is clear, then, that neither the taxpayer in *Transfer Co.* nor the taxpayer in *Finishing Co.* established a business premise or business *situs* in a nondomiciliary jurisdiction. A business *situs* in North Carolina, the nondomiciliary jurisdiction, has been established in this case.

Plushbottom further contends that the *Sterchi Bros.* case and the *Texas Co.* case are not controlling since the property in question in each of those cases was in, or used on a permanent basis in, North Carolina and was physically present in the state on the tax date. The distinction Plushbottom points out is one without a difference when we consider the definition of business *situs* in *Sterchi Bros.* The property in question (that property which was outside of Mecklenburg County on the tax date) is no different from the property which was in the Meckenburg County warehouse on the tax date, insofar as determining the threshhold question of whether Plushbottom had established a business *situs* in Mecklenburg County. Yet, Plushbottom has consistently listed with the tax supervisor's office in Mecklenburg County all of that property which is on hand in the warehouse on the tax date even though that property will be in Mecklenburg County for no longer than a week.

We, therefore, hold that Plushbottom acquired a business *situs* in Mecklenburg County so as to subject its property (piece goods and finished goods) to taxation within this state.

Did the property in question lose its *situs* for tax purposes while it was being stitched or laundered outside of Mecklenburg County? No. G.S. 105-304(f)(4) clearly provides that the temporary absence of tangible personal property from the place at which it is normally taxable shall not affect the rule of taxation. We see no difference between the property on hand on the tax date which Plushbottom readily admits should be taxed, and the property that is temporarily out of the county on the tax date. The following examples supplied by Mecklenburg County are illustrative:

> Assume [a chain toy store] has its principal office in New York and has a store in Mecklenburg County. The store is stocked with inventory which has been purchased for re-sale. ... A particular toy is placed on the shelf one day before the tax date and then is sold during the week following the tax date. It is obvious that this particular toy as well as all other inventory [whether sold the day before the tax date or not] is subject to taxation in Mecklenburg County even though the toy was not 'permanently located' in the County on the tax date. ...

Assume a national company having its principal office in New York has a major sales outlet in Mecklenburg County with substantial assets in the county. Assume further it sells trucks ... , and on the tax date one of the trucks is being serviced for repairs in York County, South Carolina ... to be returned shortly thereafter for sale or lease. Assume further that the truck was purchased by and became a part of the inventory of the taxpayer only a few days prior to the tax date. Most certainly this property would have acquired a tax *situs* in Mecklenburg County and would not have lost that *situs* by virtue of its temporary absence from the county on the tax date.

These examples point out the important factors in this case — that Plushbottom owned and had title to the goods on the tax date, and the goods had been in Mecklenburg County on one, two, or three separate occasions prior to the tax date. These goods, like most other retail inventories, were being prepared for sale to customers and were not intended to be kept on hand for any extended period of time.

The *Finishing Co.* decision supports the conclusion we reach on this question too. In *Finishing Co.*, foreign corporations shipped goods to North Carolina for a finishing process but because those foreign corporations were found not to have established a "business premise" or "business *situs*" in North Carolina, the goods could not be taxed in North Carolina. Likewise, when Plushbottom's property is shipped from Mecklenburg County to another state for a finishing process, the tax *situs* in Mecklenburg County is not interrupted. *See also Transfer Corp., supra,* in which the court held that Davidson County did not lose tax *situs* on the trucks owned by Transfer Corp. which were moving from state to state.

If the property which is located in the warehouse on a tax date is subject to taxation, then the property which is temporarily out of the state on the tax date is likewise subject to taxation under the statute. The legislature has decreed that *all* property, real and personal, within the jurisdiction of the state, is subject to taxation whether owned by a resident or a nonresident. G.S. 105-274. The purpose of this strong decree is to treat all property owners equally so that the tax burden will be

shared proportionately, and to gather in all the tax money to which the various counties and municipalities are entitled. If Plushbottom were entitled to avoid this tax, it would be placed in a more favorable position than a domestic corporation which operates an identical type business.

The decision of the State Property Tax Commission was in all respects correct and should be sustained. The judgment of the Superior Court is

Reversed.

Chief Judge MORRIS and Judge VAUGHN concur.